UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN R. LAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEUTSCHE INVESTMENT MANAGEMENT | ) | CIVIL ACTION |
| AMERICAS, INC. | ) | NO. 04-10500-EFH |
| | ) | |
| Defendant. | ) | |

## OPPOSITION TO PLAINTIFF'S
## MOTION TO COMPEL DEFENDANT, DEUTSCHE INVESTMENT
## MANAGEMENT AMERICAS, INC.'S PRODUCTION OF DOCUMENTS
## AND MOTION FOR EXTENSION OF EXPERT DISCLOSURE DEADLINE

Defendant, Deutsche Investment Management Americas, Inc. ("DIMA"), hereby opposes

Plaintiff's Motion to Compel Production of Documents and Plaintiff's Motion for Extension of

Expert Disclosure Deadline ("Motion"). DIMA maintains that it has either reasonably complied

with, or legitimately objected to, Plaintiff's discovery requests. Moreover DIMA is in the

process of producing a significant number of recently discovered additional documents.

Consequently, Plaintiff's request for further productions and sanctions is not warranted.

Plaintiff's request for an extension of time to make expert disclosures is similarly unfounded.

For these reasons, which are set forth more fully herein, Plaintiff's Motion should be denied.

### INTRODUCTION

DIMA acquired the Plaintiff's employer, Zurich Scudder Investments, Inc., in April

2002. In November 2002, Plaintiff was one of nine employees selected for layoff from a group

of approximately 200. The plaintiff alleges, *inter alia*, that his selection was based upon his age.

1.    Stipulated Protective Order

Many of the documents identified in DIMA's initial disclosures contain confidential business or personnel information. Similarly, many of the documents that are reasonably responsive to Plaintiff's First Request for Production of Documents ("Requests") also contain confidential business or personnel information. Consequently, DIMA's counsel sent a proposed stipulated protective order to Plaintiff's counsel on November 12, 2004 along with the non-confidential documents identified in its initial disclosures.

Having received no response from Plaintiff's counsel regarding the proposed stipulated protective order, DIMA mentioned it again in a December 10, 2004 letter that enclosed the non-confidential documents responsive to Plaintiff's Requests. In the December letter, DIMA informed Plaintiff's counsel that it was prepared to immediately produce the confidential documents upon agreement regarding this issue. Nevertheless, Plaintiff's counsel did not contact counsel for DIMA until January 7, 2005, regarding the stipulated protective order – nearly two months after DIMA first submitted it for their consideration.

On January 26, 2005, after the parties had negotiated changes to the proposed stipulated protective order, counsel for DIMA sent the revised order to Plaintiff's counsel for review with a joint motion for its entry and asked for confirmation that she could sign the documents on their behalf. On February 2, 2005, Plaintiff's counsel gave their assent, and DIMA's counsel filed the joint motion requesting entry of the stipulated protective order that very day. On February 14, 2005, counsel for DIMA received an electronic notice from the Court indicating that the joint motion had been granted. Later that day, DIMA produced the confidential documents to counsel

for Plaintiff.[1]  To date, more than 1,200 pages of documents have been produced.  Thus, DIMA has not been interposing any unreasonable delays in producing documents to Plaintiff.

2.    Redactions

Because some of the documents designated as confidential contain the names of other individuals terminated (or who were considered for termination) as part of the same reduction in force in which Plaintiff was terminated, DIMA initially objected to producing their names in the interest of protecting their privacy, among other considerations.[2]  DIMA instead produced these documents with the names redacted.[3]  Only *five* pages out of the 1,200 produced were redacted for this reason.  These redactions did not preclude Plaintiff or his expert from conducting any statistical analysis of the ages of employees selected for layoff or retained at the time of Plaintiff's layoff.

In early March 2005, Plaintiff's counsel contacted DIMA's counsel and asserted that unredacted documents were needed in order to assist Plaintiff's statistical expert, so that the expert could track these individuals through various documents.  As a compromise, DIMA produced these documents to Plaintiff again on March 14, 2005, with the names coded so that they could be readily tracked from document to document.

---

[1] It should be noted that Exhibit A attached to Plaintiff's Motion, which was designated as confidential, was filed by Plaintiff's counsel without following any of the measures set forth in the Stipulated Protective Order for filing such documents.  Thus, Plaintiff has violated the terms of the Stipulated Protective Order, and DIMA requests that the Exhibit be impounded as soon as possible and that the court award any other remedies that it deems to be appropriate.

[2] DIMA contends that while the names of the individuals involved in the decision to terminate his employment are undeniably relevant because it might lead to information about DIMA's motive, the names of other individuals who were terminated at the same time or were considered for termination are not.  After all, the Older Workers' Benefits Protection Act ("OWBPA") does not require employers to provide the actual names of other individuals terminated in connection with a reduction in force.  See 29 U.S.C. § 626(f)(1)(H)(ii).  The fact that the Court has entered the parties' Stipulated Protective Order did not resolve DIMA's position that the specific names are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

[3] Plaintiff's counsel asserts on page 2 of his Motion that the author of Exhibit A was redacted in addition to the names of the other terminated individuals.  This is not true.  The name of the person who created this document does not appear anywhere on it; thus, counsel for DIMA did not make any redactions inconsistent with its original objections.

3.    Additional Documents

Counsel for DIMA recently obtained over 16,000 restored e-mails and attachments, comprising many thousands of pages, from DIMA. This data had to be converted to a reviewable format in order to be reviewed to determine whether supplementation of DIMA's discovery responses and/or its initial disclosures was necessary under Fed. R. Civ. P. 26(e). On the eve of the depositions of G. West Saltonstall and David Denaro, which had been scheduled for March 30 and 31, 2005, counsel for DIMA determined that some of these documents would be, indeed, responsive, and that some could be a source of questions for the two deponents. Consequently, counsel for DIMA notified Plaintiff's counsel that it would be making a supplemental production. DIMA's counsel further suggested that the depositions of Saltonstall and Denaro be postponed until after this supplemental production had been made, and Plaintiff's counsel agreed.

As noted by Plaintiff in his Motion, DIMA intends to supplement its production with restored e-mails and attachments regarding Plaintiff's termination within the next ten days. In short, there is no need to compel DIMA to produce these supplemental documents as requested by Plaintiff in his Motion, because DIMA has already agreed to do so.

Furthermore, given the volume of additional documents to be produced and the number of new documents that contain names of persons terminated or discussed in connection with the November 19, 2002 reduction in force in the Investment Advisory Division, DIMA will produce documents reflecting these names in an unredacted format. In addition, the five pages that were previously produced with redactions for this reason will be produced again without the redactions. Thus, DIMA withdraws its objections to Request Nos. 2, 4, and 7, except to the extent that they are overbroad or unduly vague and not reasonably capable of being fully

4

responded to. (For example, Plaintiff's request for all documents support ng admissions in DIMA's answer would presumably include DIMA's admissions regarding its dentity.) DIMA's continued objections as to the remaining Requests identified in Plaintiff's Motion are discussed below.

## ARGUMENT

## I.    PLAINTIFF'S MOTION TO COMPEL IS LACKING IN MER T AND DIMA'S OBJECTIONS SHOULD BE SUSTAINED.

For the reasons set forth herein, the remaining objections DIMA ra sed as to Request Nos. 14, 18, 19, 20, 21, 27, 28, 31, and 34 should be sustained, and this Court should deny Plaintiff's Motion to compel further production and for sanctions.

A.    Request No. 14

### REQUEST NO. 14:

All formal or informal evaluations of the job performance of any other DIMA employee against whom Plaintiff John R. Layton was compared in connection with the adverse employment action taken against Plaintiff in November, 2002, for the period running from January 1, 1999 to the present.

### RESPONSE NO. 14:

DIMA objects to Request No. 14 on the grounds that it is unduly vague and overly broad in time and scope. DIMA also objects to Request No. 14 to the extent that it seeks confidential business information, proprietary information, and/or trade secrets. In addition, DIMA also objects to Request No. 14 because disclosure of the information sought would violate the privacy interests of its current and/or former employees under the Massachusetts Personnel File Statute, Mass. Gen. Laws ch. 149, § 52C, and the Massachusetts Privacy Statute, Mass. Gen. Laws ch. 214, § 1B. Finally, DIMA objects to Request No. 14 to the extent that the information it seeks is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

DIMA objected to Request No. 14 not only because of privacy concerns, but also because the Request is vague with regard to the meaning of "informal" job evaluations and is overly

5

broad in time and scope. Because Request No. 14 is not properly limited, DIMA maintains that much of the information sought is irrelevant.

Plaintiff contends in his Motion that younger, less qualified employees were retained while he was terminated, and that production of their evaluations is necessary to show that less qualified employees were, in fact, retained. It is well-established that Plaintiff must prove the following elements to establish a *prima facie* case of discrimination on the basis of age in the context of a reduction in force: (1) he is at least forty years old; (2) he performed the position at an acceptable level; (3) he suffered an adverse employment action; and, (4) DIMA did not treat age neutrally or that younger persons were retained in the *same position*. See Hildago v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 332-33 (1st Cir. 1997) (emphasis added); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993) (emphasis added). The fact that DIMA retained younger Managing Directors in other locations is not probative because their positions cannot be considered to be the same position that Plaintiff held in the Boston office. See, e.g., LeBlanc, 6 F.3d at 844 (court unconvinced that Agency Operations Representative ("AOR") positions held by thirty other younger individuals throughout an entire Northeast region could properly be considered the "same" AOR position that plaintiff held in eastern Massachusetts). Request No. 14 is not even limited to evaluations of other Managing Directors who were retained, let alone limited to evaluations of Managing Directors in the Boston office.

Furthermore, DIMA did not acquire Zurich Scudder Investments, Inc., Plaintiff's former employer, until April 8, 2002, yet this Request seeks all job evaluations from January 1, 1999 through the present. Evaluations dated years before the November 19, 2002 reduction in force, and conducted by a separate legal entity from DIMA, are not relevant to Plaintiff's claims. There is no evidence that DIMA managers ever looked at any such evaluations in making their

decisions. Similarly, any performance evaluations completed *after* the November 19, 2002 reduction in force are not relevant because they would not have been considered by the individuals who decided to terminate Layton's employment.

B.    Request Nos. 18, 19, 20, 21

### REQUEST NO. 18:

All documents concerning claimed unlawful employment practices, charges and/or problems raised by any DIMA employee during the period from January 1, 1999 to the present.

### RESPONSE NO. 18:

DIMA objects to Request No. 18 on the grounds that t is hopelessly overly broad in time and scope. DIMA also objects to Request No. 18 because it is unduly vague and burdensome. DIMA further objects to Request No. 18 on the grounds that nearly all of the information it seeks is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In addition, DIMA objects to Request No. 18 because disclosure of the information sought would violate the privacy interests of its current and/or former employees under the Massachusetts Personnel File Statute, Mass. Gen. Laws ch. 149, § 52C, and the Massachusetts Privacy Statute, Mass. Gen. Laws ch. 214, § 1B. DIMA also objects to Request No. 18 to the extent that it seeks confidential business information, proprietary information, and/or trade secrets. Finally, DIMA objects to Request No. 18 to the extent that it seeks information that is subject to the attorney-client privilege, work product doctrine, and/or other privilege.

Subject to and without waiving the above objections, DIMA responds that documents submitted by DIMA to the EEOC regarding Plaintiff's complaint of age discrimination will be produced in response to Request No. 3.

### REQUEST NO. 19:

All documents concerning any litigation or administrative proceeding, pending or completed, pertaining to age discrimination, retaliation or harassment of any employee from January 1, 1999 to the present.

**RESPONSE NO. 19:**

DIMA objects to Request No. 19 on the grounds that t is overly broad in time and scope. DIMA also objects to Request No. 19 because compliance will be unduly burdensome. DIMA fur her objects to Request No. 19 on the grounds that nearly all of the information it seeks is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In addition, DIMA objects to Request No. 19 because disclosure of the informa ion sought would violate the privacy interests of its current and/or former employees under the Massachusetts Personnel File Statute, Mass. Gen. Laws ch. 149, § 52C, and the Massachusetts Privacy Statute, Mass. Gen. Laws ch. 214, § 1B. DIMA also objects to Request No. 19 to the extent that it seeks confidential business information, proprietary information, and/or trade secrets. Finally, DIMA objects to Request No. 19 to the extent that it seeks information that is subject to the attorney-client privilege, work product doctrine and/or other privilege.

Subject to and without waiving the above objections, DIMA responds that documents submitted by DIMA to the EEOC regarding Plaintiff's complaint of age discrimination will be produced in response to Request No. 3.

**REQUEST NO. 20:**

Any waivers or releases the Defendant's agents, servants, employees or representatives may have signed to settle pending EEOC or MCAD claims, civil suits, or in conjunction with employee discharges, voluntary or involuntary layoffs.

**RESPONSE NO. 20:**

DIMA objects to Request No. 20 on the grounds that t is overly broad in time and scope and is unduly burdensome. DIMA further objects to Request No. 20 on the grounds that nearly all of the information it seeks is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In addition, DIMA objects to Request No. 20 to the extent that it seeks confidential business information, proprietary information, and/or trade secrets. Finally, DIMA objects to Request No. 20 because disclosure of the information sought would violate the privacy interests of its current and/or former employees under the Massachusetts Personnel File Statute, Mass. Gen. Laws ch. 149, § 52C, and the Massachusetts Privacy Statute, Mass. Gen. Laws ch. 214, § 1B.

Subject to and without waiving the above objections, DIMA states that it already identified and produced the proposed separation agreement and release offered to Plaintiff on November 19, 2002 as part of Def.'s Initial Disclosures.

## REQUEST NO. 21:

All documents concerning each and every layoff, discharge, involuntary transfer, demotion, reassignment, resignation and/or early retirement of any DIMA employee over 40 years of age from January 1, 1999 to the present, including but not limited to all performance evaluations, reports of internal investigations, and written communications with the affected employees or their designated representatives, including names, addresses, title, job description and ages of those laid off.

## RESPONSE NO. 21:

DIMA objects to Request No. 21 on the grounds that it is hopelessly overly broad in time and scope. DIMA also objects to Request No. 21 because compliance will be unduly burdensome. DIMA further objects to Request No. 21 on the grounds that nearly all of the information it seeks is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In addition, DIMA objects to Request No. 21 because disclosure of the information sought would violate the privacy interests of its current and/or former employees under the Massachusetts Personnel File Statute, Mass. Gen. Laws ch. 149, § 52C, and the Massachusetts Privacy Statute, Mass. Gen. Laws ch. 214, § 1B. DIMA also objects to Request No. 21 to the extent that it seeks confidential business information, proprietary information, and/or trade secrets. Finally, DIMA objects to Request No. 21 to the extent that it seeks information that is subject to the attorney-client privilege, work product doctrine, and/or other privilege.

Subject to and without waiving the above objections, DIMA responds that non-privileged documents responsive to Request No. 21 concerning Plaintiff's termination will be produced as part of Def.'s Initial Disclosures and/or in response to Request No. 3. DIMA will produce non-privileged, confidential documents, which were identified in Def.'s Initial Disclosures but have not yet been produced, subject to agreement on, and entry of, a stipulated protective order.

DIMA objected to Request Nos. 18, 19, 20, and 21 for several reasons in addition to its privacy concerns. Each of these Requests is overly broad in time and scope, even with the

9

limitations suggested by Plaintiff in his Motion. The issue in this case is whether DIMA discriminated against the Plaintiff on the basis of his age, which requires an analysis of the facts of this case alone. Accordingly, almost all of the information sought in the Request Nos. 18, 19, 20, and 21 is irrelevant and would be unduly burdensome to produce. Request No. 20, in particular, appears to have no relevance whatsoever to Plaintiff's claim that DIMA terminated him because of his age. In short, DIMA maintains it objections with respect to Request Nos. 18, 19, 20, and 21 and contends that it responded adequately to these Requests by producing documents that it submitted to the EEOC in response to Plaintiff's charge of age discrimination and by producing documents concerning its decision to terminate Plaintiff in connection with the November 19, 2002 reduction in force within the Investment Advisory Division.

C.    Request No. 27

### REQUEST NO. 27:

All performance evaluations, reports of internal investigations or other documents concerning the job performance of any individual who assumed all or any part of the job duties of Plaintiff John R. Layton at DIMA following his termination of employment.

### RESPONSE NO. 27:

DIMA objects to Request No. 27 because disclosure of the information sought would violate the privacy interests of its current and/or former employees under the Massachusetts Personnel File Statute, Mass. Gen. Laws ch. 149, § 52C, and the Massachusetts Privacy Statute, Mass. Gen. Laws ch. 214, § 1B. DIMA also objects to Request No. 27 to the extent that it seeks confidential business information, proprietary information, and/or trade secrets. DIMA further objects to Request No. 27 on the grounds that the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

DIMA contends that Request No. 27 is objectionable not only because it seeks confidential personnel information about its current or former employees, but also because the

information sought is not relevant to Plaintiff's claims or reasonably calculated to lead to the discovery of admissible evidence. Most, if not all, of Plaintiff's accounts were assigned to individuals who did not hold the title of Managing Director. For the reasons explained more fully in Section II.A above, DIMA contends that only the evaluations of other Managing Directors in the Boston office could be relevant or reasonably calculated to lead to the discovery of admissible evidence in connection with Plaintiff's claims. Moreover, evaluations of these individuals dated *after* the November 19, 2002 reduction in force are not relevant because they would not have been considered by the individuals who decided to terminate Layton's employment.

D.    Request No. 28

**REQUEST NO. 28:**

All performance evaluations, reports of internal investigations or other documents concerning the job performance of any person(s) hired by DIMA to perform the job duties and responsibilities previously performed by Plaintiff John R. Layton prior to November 29, 2002.

**RESPONSE NO. 28:**

DIMA objects to Request No. 28 because disclosure of the information sought would violate the privacy interests of its current and/or former employees under the Massachusetts Personnel File Statute, Mass. Gen. Laws ch. 149, § 52C, and the Massachusetts Privacy Statute, Mass. Gen. Laws ch. 214, § 1B. DIMA also objects to Request No. 28 to the extent that it seeks confidential business information, proprietary information, and/or trade secrets. DIMA further objects to Request No. 28 on the grounds that the information sought is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, DIMA states that that no documents responsive to Request No. 28 exist because it did not hire anyone to replace Plaintiff.

DIMA clearly stated in Response No. 28 that it did not hire anyone to replace Plaintiff.[4]

Rather, his former responsibilities were assumed by others in addition to their existing job duties.

Thus, DIMA does not understand why Plaintiff has filed a motion to compel with regard to

Request No. 28 because no responsive documents exist.

E.    Request No. 31

**REQUEST NO. 31:**

Documents identifying the aggregate compensation received by each person who assumed or later undertook to perform all or any portion of Plaintiff John R. Layton's job duties and responsibilities following his termination of employment for the period running from November 29, 2002 to the present.

**RESPONSE NO. 31:**

DIMA objects to Request No. 31 on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. DIMA further objects to Request No. 31 because disclosure of the information sought would violate the privacy interests of its current and/or former employees under the Massachusetts Personnel File Statute, Mass. Gen. Laws ch. 149, § 52C, and the Massachusetts Privacy Statute, Mass. Gen. Laws ch. 214, § 1B. In addition, DIMA objects to Request No. 31 to the extent that it seeks confidential business information, proprietary information, and/or trade secrets.

DIMA's primary objection to Request No. 31 is that the information sought is irrelevant

to Plaintiff's claims. His former accounts were distributed to a number of different people

following his termination in addition to their existing accounts and responsibilities. Plaintiff

states in his Motion that "…information pertaining to compensation received by those who took

over Plaintiff's job duties is relevant to show that Defendant's reasons for terminating Plaintiff

were not economically motivated, but were in fact related to Plaintiff's age." There simply is no

---

[4] Plaintiff inexplicably omitted this language from his Motion when it typed in each Request and its corresponding Response, but DIMA plainly gave this explanation in its original Response.

such link of relevance. Regardless of who Plaintiff's former accounts were redistributed to, and how much money they earn, the fact remains that DIMA saved money by eliminating Plaintiff's position and having one less person in the organization to compensate    Moreover, the supplemental documents that will be produced by DIMA have compensation information for most of the people to whom Plaintiff's former accounts were given as of the time of the termination decision. DIMA's objections to Request No. 31 should be sustained.

F.    Request No. 34

### REQUEST NO. 34:

Documents identifying the ages of all employees referenced in Plaintiff's document response, bearing bates numbers 1123-1187.

### RESPONSE NO. 34:

DIMA objects to Request No. 34 on the grounds that it is overly broad in time and scope and is unduly burdensome. DIMA further objects to Request No. 34 to the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

By way of background, Request No. 34 references a sixty-four page document produced by Plaintiff during discovery. This document consists of a list with three columns – the first column lists names of individuals, the second column lists a date ranging from June 2 – December 31, 2002, and the third column contains the word "Scudder" after certain individuals. There is no title or other heading to the document, and nothing on the document indicates who authored it or when it was created. When questioned about the document at his deposition, Plaintiff testified that he obtained this list from another former DIMA employee, David O'Hara. See Deposition Transcript of Plaintiff ("Plf. Dep."), attached hereto as Exhibit A, at 131. Plaintiff stated that he believes the document "...is a list of people who had their computer

13

access turned off and the dates on which that termination occurred," but he had little other information regarding the creation or contents of the document. See id.

DIMA objects to producing any documents responsive to Request No. 34 primarily because it is overly broad and the information sought is irrelevant to Plaintiff's claims. Plaintiff admitted that he does not know whether the document contains employees who left DIMA voluntarily and involuntarily, or whether the document includes employees terminated for cause. Plf. Dep. at 150-51. Therefore, the individuals listed on the document may have had their computer access terminated for a variety of reasons that are irrelevant to Plain iff's claims of age discrimination in connection with the reduction in force that occurred in the Investment Advisory Division on November 19, 2002. Plaintiff testified that Mr. O'Hara was not even working for DIMA at the time that he provided the document to Plaintiff in 2003. Plf. Dep. at 132. Even if he was working for DIMA at the time, Mr. O'Hara would not have been authorized to provide such information to Plaintiff, who was then a former employee. Because this document is meaningless, it is an undue burden of time and expense for DIMA to search for and produce each document that might reflect the age of each and everyone one of the individuals named.

Plaintiff's argument that he needs this information to show that "Defendant had a pattern of discriminating against older workers" is disingenuous. DIMA has already provided Plaintiff with sufficient information in this regard. At the time of his termination, DIMA provided Plaintiff with a list of the job titles and ages of the other terminated individuals and retained individuals within the Investment Advisory Division as part of a proposed separation agreement. DIMA has also produced documents that identify the reasons for the terminations of each of the nine individuals terminated as part of the November 19, 2002 reduction in force in the Investment Advisory Division. In addition, DIMA has produced spreadsheets listing the names,

14

job titles, ages, and employment status of all individuals employed in the Investment Advisory Division of DIMA's (US) onshore Private Wealth Management Division as of January 1, 2002, April 8, 2002, November 1, 2002, January 1, 2003, and January 1, 2004. In short, the information DIMA has provided should be sufficient for Plaintiff to conduct a thorough statistical analysis.

## II.    PLAINTIFF'S REQUEST FOR SANCTIONS IS UNWARRANTED.

Plaintiff's Motion requests sanctions in its introductory paragraph, but Plaintiff never developed an argument as to why they would be appropriate under Fed. R. Cv. P. 37. For this reason alone his request for sanctions should be denied. Regardless, sanctions are unwarranted in this case.

As explained more fully in the Introduction to this Opposition, DIMA has produced a number of documents to Plaintiff in good faith already, notwithstanding its objections to Plaintiff's Requests. DIMA is preparing to supplement this production with restored computer records regarding Plaintiff's termination in the near future. These computer records were not readily available at the time of DIMA's initial document production – it took weeks for DIMA to retrieve them and for them to be converted into a reviewable format. It then took additional time for DIMA's counsel to review the 16,000 documents, to determine which ones should be produced, and to actually label, copy, and produce them. Moreover, the deadline for completing fact discovery is not until May 18, 2005, and counsel for DIMA has already indicated that it will assent to a motion to extend this deadline to allow more time for Plaintiff's counsel to review the new documents and to schedule depositions.

Furthermore, DIMA has substantial justification for its objections to Plaintiff's discovery requests, which have been explained herein. Thus, this is not a situation in which DIMA has

15

simply ignored Plaintiff's discovery requests – there is simply a good faith dispute between the parties as to whether certain Requests are reasonable and relevant or likely to lead to the discovery of admissible evidence. Under these circumstances, sanctions are not warranted.[5]

## III. PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME TO FILE EXPERT DISCOVERY DISCLOSURES SHOULD BE DENIED.

Plaintiff's Motion for an Extension of Time to File Expert Discovery Disclosures should also be denied for a lack of merit. The deadline for making expert disclosures expired on March 7, 2005. Plaintiff's counsel telephoned Defendant's counsel on February 24, 2005 and stated, in part, that Plaintiff needed an extension of time within which to make expert disclosures. As grounds for this request, Plaintiff's counsel stated that it wanted more information from DIMA in order to make its disclosures in the form of unredacted documents and deposition testimony. During this conversation, Plaintiff's counsel stated that they planned on using both a statistical expert and an expert on Plaintiff's purported economic damages.

DIMA's counsel contacted Plaintiff's counsel on March 1, 2005 to explain that although it was willing to extend the deadline for making expert disclosures by two weeks, up to and through March 21, 2005, it was unwilling to extend the deadline any further. On March 14, 2005, DIMA produced again all documents that had been redacted (only five pages out of 1,200 produced), in a coded format so that Plaintiff could track them throughout the documents. To

---

[5] Furthermore, counsel for DIMA *did* respond to Plaintiff's March 15, 2005 written request for a discovery conference within the time frame set forth in LR 37.1(B). This written request was faxed to Attorney Krauss, who was out of town when it arrived. The request stated that Plaintiff's counsel was going to file a motion to compel on March 18, 2005 unless it heard back from counsel for DIMA before then. Attorney Krauss responded to the letter by calling Plaintiff's counsel on March 17th to ask if DIMA could have more time to provide its position on Plaintiff's intent to file a motion to compel because Attorney Rubin, who is lead counsel on the case, was not going to be in the office until the following week. At that time, Plaintiff's counsel stated that if he did not hear back from them by 1:00 p.m. on March 22nd, he would file a motion to compel. Although counsel for DIMA did not contact counsel for Plaintiff prior to this time, it should be noted that prior to receiving the March 15th letter, counsel for DIMA had already spoken with counsel for Plaintiff by telephone and confirmed its position that the names of individuals terminated or considered for termination as part of the November 19, 2002 reduction in force were irrelevant and would not be unredacted from certain documents. This redaction of names on privacy grounds was the primary issue raised in the March 15th letter.

date, Plaintiff's counsel has failed to provide *any* expert disclosures whatsoever about either its alleged statistics expert or its economic damages expert.

Plaintiff's instant Motion to Extend Expert Disclosure Deadlines should be denied because no valid excuse has been raised by Plaintiff for his failure to make imely disclosures. Pursuant to Fed. R. Civ. P. 26(a)(2)(B), Plaintiff was required to submit a report, prepared and signed by a witness retained for providing expert testimony, which contains the following information:

> ...a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Id.

Even accepting Plaintiff's argument that his expert(s) needs additional information to complete the report, nothing prevented Plaintiff from submitting at least a preliminary report prior to the expiration of the deadline that listed qualifications, publications, compensation, and past testimony. Moreover, nothing in Plaintiff's Motion explains why more time is required for making disclosures regarding his purported expert on the issue of economic damages. Indeed, the expert on this issue is not addressed at all. For all of these reasons, Plaintiff's motion to extend the deadline for making expert disclosures should be denied.

## CONCLUSION

For the foregoing reasons, Defendant, Deutsche Investment Management Americas, Inc., respectfully requests that this Court deny Plaintiff's Motion to Compel Production of Documents and Motion for Extension of Expert Disclosure Deadline. In addition, Defendant requests that this Court deny Plaintiff's request for the imposition of sanctions because its objections and opposition to Plaintiff's Requests are substantially justified and made in good faith.

DEUTSCHE INVESTMENT MANAGEMENT
AMERICAS INC.,

By its attorneys,

/s/: Heather C. Krauss
David S. Rubin, BBO # 546213
Daniel J. Blake, BBO # 552922
Heather C. Krauss, BBO # 644457
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Dated:  April 20, 2005                    (617) 342-4000

## CERTIFICATE OF SERVICE

I, Heather C. Krauss, hereby certify that on April 20, 2005, a true copy of the foregoing document was served via first-class mail, postage prepaid, upon counsel for Plaintiff, John K. Weir, John K. Weir Law Offices, LLC, 300 Park Avenue, Suite 1700, New York, NY 10022 and electronically upon Nancie L. Edgren, Barron & Stadfeld, P.C., 100 Cambridge Street, Suite 1310, Boston, MA 02114.

/s/: Heather C. Krauss
Heather C. Krauss

# Exhibit A

John R. Layton

```
                                                                    1
1                                               Volume:  I

2                                               Pages:  1-168

3                                               Exhibits:  1-30

4                       UNITED STATES DISTRICT COURT

5                  FOR THE DISTRICT OF MASSACHUSETTS

6

7

8    Civil Action No. 04 10500 EFH

9    - - - - - - - - - - - - - - - - - - - x

10   JOHN R. LAYTON,

11                    Plaintiff,

12   vs.

13   DEUTSCHE INVESTMENT MANAGEMENT

14   AMERICAS, INC.,

15                    Defendant.

16   - - - - - - - - - - - - - - - - - - - x

17

18               DEPOSITION OF JOHN R. LAYTON

19                  Wednesday, October 13, 2004

20                  Epstein, Becker & Green

21                  111 Huntington Avenue

22                  Boston, Massachusetts 02199

23                  Commencing at 10:06 a.m.

24          Reporter:  Karen A. Morgan, CSR/RPR
```

131

1    A.    It does not appear -- it doesn't look like my

2    wife's writing but I notice that at the top it does say

3    Triguard and I can not identify it.

4                    (Exhibit No. 23 marked

5                    for identification.)

6    Q.    Now the document we have marked as Exhibit 23

7    is Bates stamped 1123 through 1186?

8    A.    Yes.

9    Q.    Have you seen that document before?

10   A.    I believe so.  I believe it is a list of

11   names that is a list of people who had their computer

12   access turned off and the dates on which that

13   termination occurred.

14   Q.    And where did you get that list from?

15   A.    I got this list from a former employee of

16   Deutsche Bank.

17   Q.    Who is that?

18   A.    His name is David O'Hara.

19   Q.    And how did it come to be that you were

20   speaking with Mr. O'Hara?

21   A.    Mr. O'Hara is someone who appreciated the

22   fact that I treated him with respect when we both

23   worked at Scudder and he and I had a correspondence

24   that I can't recall how it started.  If I recall

132

1    correctly, I may have asked him whether -- somehow it
2    came up that he had information that I might find
3    helpful and there was an e-mail.  I sent him an e-mail
4    saying if he didn't have a problem with sharing that
5    information with me that I would be very -- I would
6    very much appreciate receiving it.
7        Q.    Was he still at Deutsche Bank?
8        A.    I don't believe so.
9        Q.    When did he leave?  Do you recall?
10       A.    I don't know.
11       Q.    When did you have this communication with
12   him?
13       A.    Sometime in 2003 and I can't say accurately
14   when in 2003.
15       Q.    Where does he work now?  Do you know?
16       A.    I don't know.
17       Q.    What was his job title at Scudder or Deutsche
18   Bank?
19       A.    I don't know.
20       Q.    Do you know what his job responsibilities
21   were?
22       A.    He was involved in computer access for
23   employees.  My involvement with him was when he was
24   involved in building and maintaining an investment

150
1   people this is.  Even if you look at just the people

2   who left the firm in November, you're ta`king about I

3   don't know how many people.  Probably it looks to me

4   like it is a couple of hundred.

5       Q.   In November?

6       A.   In November of 2002.

7       Q.   And is it your -- Go ahead.

8       A.   And I believe that -- I believe that Deutsche

9   Bank over a long period of time -- I bel`eve Deutsche

10  Bank manipulated the information to make it appear and

11  make me rely on it in signing this separation agreement

12  manipulated the data so that it would appear as though

13  there was no age discrimination involved   I happen to

14  think that if you look at the people who were required

15  to leave the firm from April through the end of the

16  year, it paints a very different perspective from this

17  list that shows that there were nine people whose jobs

18  were eliminated.

19      Q.   Just so I'm clear, on this list that you

20  obtained from this former employee who seems to have

21  taken it with him somehow, is this list limited to

22  former Scudder employees or are these Deutsche Bank as

23  well?

24      A.   Those are that are identified with Scudder I

151

1   believe are former Scudder employees.  Those who are

2   identified without Scudder I believe may have been

3   Deutsche Bank prior to the combination.

4       Q.   Does this include employees who left

5   voluntarily and involuntarily?

6       A.   I don't know.

7       Q.   Does it include employees who were discharged

8   for cause?

9       A.   I don't know.

10              (A break was taken.)

11              MR. WEIR:   I think you were asking him

12   about why he felt it was age discrimination as

13   reflected in the determination.

14              MR. RUBIN:   I understand where we were.

15       A.   Had I answered that sufficiently?

16       Q.   Unless you have -- as I understand it, I

17   asked you some time ago what evidence do you believe

18   there is to indicate that you were treated or

19   terminated because of your age and you answered, as I

20   understand it, your evidence is, one, the way your

21   accounts were distributed which we have talked about,

22   two, the fact that the other member of the equity

23   strategy team remained and you were terminated and

24   three --

John R. Layton

167

1                    C E R T I F I C A T E

2          I, JOHN R. LAYTON, do hereby certify

3    that I have read the foregoing transcript of my

4    testimony, and further certify that it is a true and

5    accurate record of my testimony (with the exception of

6    the corrections listed below):

7    Page    Line                    Correction

8      7       5              s/b  KENYON College

9     161      6                    s/b  Mazer

10
      161      8                    s/b  Spadaford
11

12

13

14

15

16

17

18              JOHN R. LAYTON

19         Sworn and subscribed to before me this  7  day

20   of March, 2004. 2005

21

22

23                                 Public  Maircle Barbos

24   My commission expires