UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN R. LAYTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEUTSCHE INVESTMENT MANAGEMENT | ) | CIVIL ACTION |
| AMERICAS, INC. | ) | NO. 04-10500-EFH |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S UNOPPOSED MOTION FOR LEAVE TO FILE REPLY BRIEF

Pursuant to LR 7.1(B)(3), Defendant Deutsche Investment Management Americas Inc. ("DIMA") hereby moves for leave to file a reply brief to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition"). DIMA's proposed reply brief is attached hereto as Exhibit A. In support of this Motion, DIMA states that a reply brief is necessary to address Plaintiff's request for further discovery pursuant to Fed. R. Civ. P. 56(f), which is contained within his Opposition. A reply brief is also necessary to address and clarify several issues raised in Plaintiff's Opposition and supporting pleadings, which will be of assistance to the Court in ruling on Defendant's Motion for Summary Judgment. Plaintiff does not oppose this Motion to file a reply brief.

WHEREFORE, Deutsche Investment Management Americas Inc. respectfully requests that it be allowed to file the attached Memorandum in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

Respectfully submitted,

DEUTSCHE INVESTMENT MANAGEMENT
AMERICAS INC.,

By its attorneys,

/s/: Heather C. Krauss
David S. Rubin, BBO # 546213
Heather C. Krauss, BBO # 644457
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
(617) 342-4000
hkrauss@foley.com

Dated: March 7, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/: Heather C. Krauss
Heather C. Krauss

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to LR 7.1, I hereby certify that counsel for Defendant and counsel for Plaintiff conferred by telephone on March 7, 2006 in good faith, and that counsel for Plaintiff is not opposed to Defendant's Motion for Leave to File Reply Brief so long as counsel for Defendant will not oppose a motion by Plaintiff to file a response, if Plaintiff determines that a such response is necessary.

/s/: Heather C. Krauss
Heather C. Krauss

Dated: March 7, 2006

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN R. LAYTON,<br><br>            *Plaintiff,*<br><br>v.<br><br>DEUTSCHE INVESTMENT MANAGEMENT<br>AMERICAS, INC.<br><br>            *Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 04-10500-EFH |

## DEFENDANT'S MEMORANDUM IN REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendant Deutsche Investment Management Americas Inc. ("DIMA") hereby submits the following Memorandum in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition").

I.    Plaintiff's Request for Further Discovery Pursuant to Fed. R. Civ. P. 56(f) Should Be Denied.

As an initial matter, Plaintiff's request for further discovery pursuant to Fed. R. Civ. P. 56(f) to take or re-open the depositions of James Maloney, G. West Saltonstall, Gloria Nelund, and Pierre DeWeck, to engage in expert discovery, and to engage in other "additional discovery" should be denied. (See Opposition at 12 – 14.) Rule 56(f) is "designed to minister to the vigilant, not to those who slumber upon perceptible rights" as Plaintiff has done in this case. Massachusetts Sch. of Law v. American Bar Ass'n, 142 F.3d 26, 45 (1st Cir. 1998); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 92 (1st Cir. 1996); Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 989 n.5 (1st Cir. 1988).

To benefit from the protection of Rule 56(f), a litigant ordinarily must furnish the court with a timely statement – if not by affidavit, then by some other authoritative manner – that: (1) explains his or her current inability to adduce the facts essential to filing an opposition; (2) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable period of time; and, (3) indicates how those facts would influence the outcome of the pending summary judgment motion. Velez v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004). The litigant must also demonstrate that it exercised due diligence in pursuing discovery before the summary judgment initiative surfaced. See id.; Massachusetts Sch. of Law, 142 F.3d at 45. Plaintiff's request for additional discovery pursuant to Rule 56(f) does not satisfy these criteria and should be denied.

By way of background, the Court previously extended the fact discovery deadline in this case *three times* in response to joint motions by the parties, until August 31, 2005. The Court similarly extended the deadline for completing expert discovery until November 1, 2005 based on requests by the parties. Plaintiff did not seek to extend these deadlines further, and has never made any expert witness disclosures. For these reasons alone, it strains credulity for Plaintiff to argue that he exercised due diligence in pursuing discovery before Defendant's Summary Judgment Motion was filed on January 17, 2006.

Furthermore, the assertion that additional discovery is needed in connection with Plaintiff's "disparate impact ADEA claims" lacks merit. Plaintiff's Complaint alleges age discrimination based solely on a disparate treatment theory – *not* a disparate impact theory. Plaintiff has never sought to amend his Complaint to include a disparate impact claim, notwithstanding the fact that Smith v. City of Jackson, 125 S.Ct. 1536 (2005), was decided on March 30, 2005, well before the discovery deadline in this case. Moreover, while Smith held

2

that a disparate impact theory based on age may be cognizable, a plaintiff is responsible for isolating and identifying the specific employment practice that is allegedly responsible for any observed statistical disparities. <u>See id.</u> at 1545. It is not enough to simply allege that there may have been some disparate impact on workers – which is all that Plaintiff has done here – or to point to a generalized policy that leads to such an impact. <u>See id.</u> Furthermore, the parties previously scheduled the deposition of James Maloney for August 2, 2005. Plaintiff's counsel thereafter cancelled the deposition and never sought to reschedule it. For these reasons, allowing further fact and expert discovery in order to allow Plaintiff to develop a brand new disparate impact claim is unwarranted, untimely, and highly prejudicial to DIMA at this late stage of the case.

Plaintiff's request for additional discovery in connection with his disparate treatment claim is also unfounded. DIMA produced a memo authored by Len Dolan to Plaintiff on June 13, 2005, the day before Gloria Nelund's deposition. Thus, Plaintiff's counsel had the opportunity to question Nelund about this note, and he did so – extensively – at her deposition on June 14, 2005. Plaintiff never sought to re-open G. West Saltonstall's deposition (or to depose Dolan) in the ten remaining weeks of fact discovery, and he offers no explanation for his failure to do so. Similarly, even accepting Plaintiff's assertion that Pierre DeWeck's name did not surface until depositions of other DIMA employees in May and June 2005,[1] he offers no explanation as to why he did not seek to take DeWeck's deposition in the intervening eight months prior to his filing of an Opposition to Defendant's Motion for Summary Judgment.

---

[1] Plaintiff suggests that DIMA was obligated to inform him earlier of DeWeck's existence pursuant to Fed. R. Civ. P. 26(a)(1). Fed. R. Civ. P. 26(a)(1) required DIMA to disclose only those individuals "likely to have discoverable information that [DIMA] may use to support its claims or defenses." <u>Id.</u> DeWeck does not fall within that definition. Furthermore, multiple documents produced to Plaintiff in April 2005 revealed DeWeck's name, so it is disingenuous for Plaintiff to claim that his name surfaced for the first time at depositions taken in May and June 2005.

Plaintiff should not be allowed further discovery now on his disparate treatment claim in order to make up for his earlier lack of diligence. Moreover, Plaintiff fails to explain what facts he seeks from these individuals that would affect the outcome of DIMA's pending summary judgment motion or that the facts could be assembled in a reasonable amount of time.

In short, DIMA vigorously opposes Plaintiff's request for further discovery under Fed. R. Civ. P. 56(f). Plaintiff's request is procedurally defective in that he has not submitted an affidavit or any other authoritative manner to support his need for further discovery (indeed, the request is not even filed as a separation motion but is buried in his Opposition as an alternative position), and it is lacking in substantive merit as well.

## II.    Plaintiff Fails to Adduce Sufficient Evidence to Defeat Summary Judgment on Count I

In his Opposition, Plaintiff fails to show that a genuine issue of material fact exists with regard to his age discrimination claim. Establishing a genuine issue of material fact for purposes of defeating a motion for summary judgment "...requires more than effusive rhetoric and optimistic surmise." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). "[C]onclusory allegations, improbable inferences, and unsupported speculation" will not suffice, either. Id. quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Because several items that Plaintiff points to as "proof" of a discriminatory animus in his Opposition are bereft of any significant probative value, summary judgment is appropriate on Count I. Cadle Co., 116 F.3d at 961.

First, as anticipated, Plaintiff relies heavily on the undated memo authored by Dolan to support his misguided claim that his termination was unlawfully motivated by his age. However, Plaintiff fails to cite to any admissible evidence to support his statements about when Dolan created the note, when Dolan gave the note to Saltonstall, or that Dolan knew his name was on a

4

list of employees who would potentially be laid off during a reduction in force. Plaintiff merely assumes that Dolan discovered that his name was on the October 21st list of potential terminees, that Dolan prepared the memo in order to take his name off of the October 21st list, and that the memo was given to Saltonstall between October 21st and the date when Plaintiff's name appeared on a list of potential terminees. The only citations that Plaintiff has to support these fanciful propositions are references to the undated memo itself.     (See Plf. Correct Counterstatement at ¶¶ 47, 48.) Plaintiff's unsupported conjectures simply do not constitute probative evidence and undercut the significance that he attaches to the memo.[2]

Second, Plaintiff's allegations that Scudder had an older workforce than DIMA, that DIMA had a sinister scheme to eliminate positions held by Scudder's older employees, that DIMA terminated other employees in connection with the November 19, 2002 reduction in force, and that DIMA concealed the names of other terminated employees from the OWBPA list provided to Plaintiff are not supported by any admissible evidence. The primary "evidence" that Plaintiff cites to in support of these propositions are his "beliefs."[3]     (See, e.g., Plf. Corrected Counterstatement at ¶¶ 16, 17.) It is well-established, however, that "statements made upon information and belief, as opposed to personal knowledge, are not entitled to weight in the summary judgment balance." Cadle Co., 116 F.3d at 961. The record is clear that Plaintiff's termination on November 19, 2002 resulted from a very specific process within the Investment

---

[2] Furthermore, Plaintiff's contention that DIMA "adopted" the comments in Dolan's memo because Saltonstall forwarded it to Nelund and because DIMA did not "disavow" it lacks merit. By this logic, Saltonstall also adopted Dolan's comment that he is a "Small distributor of Mount Gay Rum" and all of his other comments in the memo. Saltonstall's note on the cover sheet indicates that he interpreted Dolan's memo to be nervous humor.

[3] Plaintiff also cites to the Affidavit of David R. O'Hara to support his statement that other terminations took place at DIMA following the acquisition of Scudder. For the reasons explained more fully in DIMA's Motion to Strike Affidavit of David O'Hara and Attached Exhibit 1, which was filed herewith, this evidence is inadmissible under Fed. R. Civ. P. 56(e) and should not be considered in ruling on Defendant's Motion for Summary Judgment.

Advisory Division, unrelated to and distinct from earlier terminations or terminations in other businesses.

Finally, it should be noted that in his Opposition, Plaintiff consistently compares himself favorably with Debbie Moses, who was another Managing Director in the Boston office at the time of the November 19, 2002 reduction in force within the Investment Advisory Division ("RIF"). Moses was *retained* during the RIF, as was Saltonstall, the only other Managing Director in the Boston office at that time. Plaintiff completely ignores the facts that both Moses and Saltonstall are older than he is, that they were likewise former Scudder employees, and that they were both retained during the RIF, persuasive evidence which undermines his argument that age was the motivating factor in his termination.

III.   Counts II, III, and IV Contain Completely New Allegations and Theories and Should Be Dismissed.

Plaintiff also raises brand new allegations and theories within Counts II, III, and IV in his Opposition. In his Complaint, the basis for Counts II, III, and IV was the letter agreement that was offered to Plaintiff on November 19, 2002. Plaintiff alleged that DIMA violated the implied covenant of good faith and fair dealing (Count II), that DIMA breached the letter agreement by not paying him $244,014 after Plaintiff allegedly signed and accepted its terms (Count III), and that DIMA negligently and/or fraudulently misrepresented the number and ages of employees who had been terminated on the OWBPA list attached to the letter agreement (Count IV). Plaintiff's new allegations raised for the first time in his Opposition are not only significantly different from those in his Complaint, but they also contradict representations that Plaintiff's counsel made to the Court at the June 30, 2004 Local Rule 16 scheduling conference regarding the basis for Counts II, III, and IV.

6

Plaintiff never sought to amend his Complaint to include his new theories for his breach of the implied covenant of good faith and fair dealing, breach of contract, or misrepresentation claims. Accordingly, DIMA has proceeded with discovery and its summary judgment motion under Plaintiff's counsel's original representation about Counts II, III, and IV and the allegations in the Complaint. Courts do not permit the litigation tactic of raising new theories for the first time in opposition to motions for summary judgment. See, e.g., United States v. Mountzoures, 376 F.Supp.2d 13, 19 (D.Mass. 2005) (plaintiffs could not rely on newly-minted theories of liability raised in opposition to survive summary judgment); Agri-Mark, Inc. v. Niro, Inc., 233 F.Supp.2d 200, 207 (D.Mass. 2002) ("It is well-settled that plaintiffs are generally not permitted to raise brand new theories for their case in opposition to a motion for summary judgment particularly where, as here, they have been given ample latitude to amend their complaint."); Flaherty v. Baybank Merrimack Valley, N.A., 808 F. Supp. 55, 63 (D.Mass. 1992) (plaintiffs could not proceed on new allegations raised for the first time in opposition to summary judgment); Logiodice v. Trustees of Maine Cent. Inst., 170 F. Supp.2d 16 (D.Me. 2001) (new theory of liability could not be raised for first time in opposition to summary judgment) (internal citation omitted), aff'd, 296 F.3d 22 (2002), cert. denied, 537 U.S. 1107 (2003). Cf. Bogdahn v. Hamilton Standard, 973 F.Supp. 52, 53-54 (D.Mass. 2001) (criticizing plaintiff's summary judgment strategy of reframing "the causes of action in the hope of latching onto something that would work.")

Courts' disregard of new matters raised in opposition to summary judgment is particularly appropriate when, as here, the new assertions are not supported by "admissible evidence" as required under Rule 56(e). For example, with respect to Counts II and III, Plaintiff fails to cite any evidence supporting his newly-minted assertion that he was entitled to a bonus

for 2002, let alone any evidence regarding the calculation or amount of such a bonus. There is also a lack of evidence regarding the formation or breach of the alleged "implied contract" between Plaintiff and Leo Grohowski. Finally, there is no admissible evidence to establish that Grohowski's alleged implied contract with Plaintiff that DIMA would not terminate him during subsequent reductions in force was false at the time that it was made. To the contrary, the record contains overwhelming evidence that the reduction in force that took place on November 19, 2002 within the Investment Advisory Division was distinct from earlier layoffs and that this RIF was not mandated until September 2002 – *after* Grohowski's alleged promise to Plaintiff. The only "evidence" that suggests otherwise are Plaintiff's repeated citations to his "beliefs." Thus, even under his new theories of liability for Counts II, III, and IV, Plaintiff fails to establish a trial-worthy issue.

Plaintiff simply should not be allowed to proceed with his new theories of liability on Counts II, III, and IV. And, since Plaintiff failed to address Defendant's arguments for dismissal of Counts II, III, and IV as they have been styled since the inception of this case, Defendant's motion for summary judgment on these Counts should be deemed uncontested and allowed.

## CONCLUSION

For these reasons, as well as those set forth in the initial Memorandum of Law in Support of Defendant's Motion for Summary Judgment, Deutsche Investment Management Americas Inc.'s Motion for Summary Judgment should be granted in its entirety.

Respectfully submitted,

DEUTSCHE INVESTMENT MANAGEMENT
AMERICAS INC.,

By its attorneys,

/s/: Heather C. Krauss
David S. Rubin, BBO # 546213
Heather C. Krauss, BBO # 644457
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
(617) 342-4000
hkrauss@foley.com

Dated: March 7, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/: Heather C. Krauss
Heather C. Krauss

9

BOST_195551 1