# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| John R. Layton,<br><br>        Plaintiff,<br><br>v.<br><br>Deutsche Investment Management<br>Americas, Inc.,<br><br>        Defendant. | BBO No. 351000<br><br>Amended Complaint<br><br>TRIAL BY JURY REQUESTED |

Plaintiff John Layton, by his attorneys, alleges upon information and belief as follows:

PRELIMINARY STATEMENT

1.   This Complaint concerns the unlawful actions of Defendant Deutsche Investment Management Americas, Inc. (hereinafter "Defendant" or "DIMA"). Defendant subjected Plaintiff to age discrimination when it unlawfully terminated his employment. At the time of Plaintiffs termination, Defendant offered Plaintiff a proposed severance agreement. Defendant failed to comply with the Older Workers Benefit Protection Act (hereinafter "OWBPA") by failing to include a complete and accurate list and description of the other employees age 40 and over whose employment was terminated by Defendant at or about the same time Plaintiffs employment was terminated. The proposed severance agreement provided no payment to Layton of any portion of Layton's bonus for 2002, even though Layton had been employed by DIMA for 11 of the 12 months of 2002, and had made significant financial contributions during that year.  Defendant never paid Layton any portion of his 2002 bonus.  Defendant also failed to honor its implied agreement with Layton not to terminate him in reductions in force/layoffs related to the DIMA-Scudder

merger. Defendant's conduct constitutes age discrimination, breach of the implied covenant of good faith and fair dealing, breach of contract, and fraudulent and/or negligent misrepresentation.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the matter pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq., and 28 U.S.C. § 1331, 1343 (a)(4).

3.      Venue in this District is proper because the unlawful employment practices of which Plaintiff complains occurred within this District, as required by 28 U.S.C.§ 1391, because a substantial part of the other acts and transactions complained of occurred in this District, and DIMA maintains offices and conducts business in this District. Venue in this District is proper under the state law claims pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the District.

## PARTIES

4.      Plaintiff is an individual residing at 26 Longmeadow Drive, Westwood, Massachusetts 02090.

5.      Defendant is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 345 Park Avenue, New York, New York 10154.

6.      Defendant is a leading international investment management organization and a subsidiary of Deutsche Bank A.G., a corporation organized under the laws of Germany ("Deutsche Bank").

7.      Defendant was, and is, at all times herein mentioned, responsible as an employer for the acts of its supervisors, agents and employees, and more particularly, for the acts of its directors, executives, management and supervisors responsible for Defendant's compliance with

anti-discrimination laws.

8.  At all relevant times, Defendant has continuously been a corporation doing business in the State of Massachusetts, and has continuously employed at least 20 employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff duly and timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 15, 2003. More than 180 days have passed from the filing of the Charge. On December 18, 2003, the EEOC issued a Right to Sue Letter which the Plaintiff received permitting the Plaintiff to commence an action under the Age Discrimination in Employment Act (hereinafter "ADEA"). A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

10.  Plaintiff has fulfilled all conditions precedent to the institution of this action, and has filed this Complaint within ninety (90) days from receipt of the Right to Sue Letter from the EEOC. Plaintiff has duly exhausted all available administrative remedies.

## ALLEGATIONS COMMON TO ALL CLAIMS

11.  Plaintiff's date of birth is September 1, 1954.

12.  Plaintiff received his Bachelor of Arts degree from Kenyan College and a Master's degree in Education from the University of Michigan.

13.  Plaintiff was an employee of Zurich Scudder Investments, Inc. (hereinafter "Scudder") beginning in 1994.

14.  During Plaintiffs tenure with Scudder, he received raises and bonuses in every year of his employment, and was repeatedly told by his supervisors, Messrs. Reiss and Hartman, that he was on a top-management career track.

15. In or about April 2002, Scudder was acquired by Deutsche Bank. At or around this time, Scudder changed its corporate name to "Deutsche Investment Management Americas, Inc."

16. Both prior to, and following, Deutsche Bank's acquisition of Scudder, Plaintiff worked as a Managing Director in the Private Clients Group which performed quite well financially for both Scudder and DIMA.

17. Of the seven individuals in this group who had their own portfolios or "books of business", Plaintiffs "book of business" was the second largest (350 accounts), while the smallest "book of business" of the individuals in this group was well under 100 accounts.

18. Despite his substantial "track record" on significant accounts, and despite assurances from his supervisors that Plaintiff would, if he chose to do so, be able to continue to have a career at DIMA, on or about November 19, 2002, Plaintiff was summoned abruptly to a meeting with Mr. G. West (Westy) Saltonstall and Mr. David Denaro, and advised that his job position was being eliminated".

19. At this time, a confidential letter from Mr. Saltonstall to Plaintiff was delivered to Plaintiff which stated that "the restructuring within PIC~Investment Advisory has resulted in your position being eliminated", with effective date of November 29, 2002.

20. Attached to the above-described letter from Mr. Saltonstall was a proposed severance agreement.

20A. The proposed severance agreement provided no payment to Layton of any portion of Layton's bonus for 2002, even though Layton had been employed by DIMA for 11 of the 12 months of 2002, and had made significant financial contributions during that year. Defendant never paid Layton any portion of his 2002 bonus.

21.  The above-described severance agreement ~~release~~ failed to comply with OWBPA by failing to include a complete and accurate list and description of the other employees age 40 and over whose employment was terminated by Defendant at or about the time Plaintiffs employment was terminated.

22.  [Not used]

23.  [Not used]

24.  [Not used]

25.  [Not used]

25A.  On April 8, 2002, Deutsche Bank ("Deutsche Bank") acquired Scudder from Zurich Insurance and Layton became a Managing Director of DIMA. DIMA's termination of Layton breached an implied agreement between DIMA and Layton that Layton would not be terminated in any reduction in force/layoffs related to the DIMA-Scudder merger. During the merger negotiations prior to April 2002, and continuing for a brief period thereafter, Layton and many other investment professionals of Scudder considered alternative employment opportunities, principally because of concern over their clients' reactions to acquisition of Scudder by a large German bank.

25B.  DIMA engaged in a concerted effort to convince Layton not to accept employment elsewhere, and convinced Layton to continue working for DIMA by promising him promotions and additional compensation. Deutsche Bank's Leo Grohowski ("Grohowski") made promises to Layton to induce Layton to stay on with Deutsche Bank, including a promise that, in addition to continuation of Layton's portfolio management duties, Layton would be given additional responsibilities as a member of Deutsche Bank's Equity Strategy Group (the "ESG").

25C.    Layton understood from this discussion with Grohowski that his compensation at DIMA would be enhanced if he accepted this dual role in the merged entity.  In particular, Grohowski told Layton that if Layton could convince him of his "commitment" to DIMA and the PWM Group, Grohowski would make him Co-chair of the ESG and would enhance Layton's compensation to reflect his new duties and responsibilities, and Layton responded to this offer that he was committed to DIMA for the long term.  As a result of this discussion, Layton was promoted to Co-chair of ESG.

25D.    In August 2002, approximately two months after an alternative employment opportunity at Lee Munder Capital G r o u p ("LMCG") offered as a package deal to Layton, Deborah Moses ("Moses"), a DIMA Managing Director, and W. Roy Duke had been withdrawn, Grohowski told  Layton that Layton would be "crazy to accept other employment."

25E.   DIMA's promises and representations carried with them the implicit agreement that DIMA would not fire Layton in any reduction in force or layoffs related to the merger.  Both parties understood this to be the agreement, as it would have made no sense for Layton to forego good employment opportunities elsewhere only to be fired by DIMA shortly after the merger.

25F.    At the time of its acquisition of Scudder, Deutsche Bank knew not only that the financial markets were deteriorating rapidly but also that the Scudder workforce was substantially older than the Deutsche Bank workforce, particularly at senior portfolio management levels.  Accordingly, Deutsche Bank knew that the acquisition of Scudder would result in substantial downsizing of the number of personnel employed, with significant adverse effect on Scudder's older employees.   Despite this awareness, Deutsche Bank never communicated to Layton that he was considered other than a stellar performer or that his decision to decline to participate in the Special Performance Incentive program could have an adverse impact on his career.

25G. Layton relied on DIMA's promises by continuing his work for DIMA, and in fact did not pursue good opportunities to become employed elsewhere.

25H. Yet DIMA terminated Layton just three (3) months after promoting him to Co-chair of the ESG. This was a clear breach of their contract.

## COUNT ONE

(Violation of Age Discrimination in Employment Act, 29 U.S.C. § 623)

25I. Plaintiff repeats and realleges Paragraphs I through 25H above as though fully and completely set forth herein.

26. On November 19, 2002, Plaintiff was forty-nine years old.

27. At all relevant times, Plaintiff met Defendant's legitimate job performance expectations.

28. Defendant unlawfully engaged in discriminatory practices against Plaintiff based upon age by terminating Plaintiff under the circumstances described above.

29. Defendant did not treat age neutrally in making its decision to terminate Plaintiff and age was a substantial motivating factor in Defendant's decision to terminate Plaintiff.

30. The conduct of Defendant was intentional, willful and malicious, and intended to humiliate and demean Plaintiff.

31. Defendant, during the period mentioned herein, was obligated to keep the workplace free from unlawful discrimination, and to prevent its employees from violating any laws, federal, state or city, related to preventing unlawful discrimination in employment.

32. After Plaintiff's termination, his job was, contrary to prior representations, not eliminated, and his duties at DIMA were assumed, in whole or in part, by an individual or individuals who were younger than Plaintiff including at least two persons under age 40.

33. By reason of the foregoing, Defendant engaged in unlawful employment practices in violation of the Age Discrimination in Employment Act.

34. As a direct and proximate result of Defendant's wrongful and unlawful discrimination, Plaintiff has suffered substantial damages, including but not limited to, loss of wages, employee benefits, anticipated retirement benefits, impairment of his professional reputation in the business community, and impairment of his career prospects.

35. As a result of Defendant's unlawful conduct, Plaintiff is entitled to such relief as may be appropriate to effectuate the purposes of the statute, including but not limited to, back pay, front pay, other compensatory damages, punitive damages, attorneys' fees, lost employee benefits, pecuniary losses, costs, and expenses.

## COUNT TWO

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

36. Plaintiff repeats and realleges Paragraphs 1 through 35 above as though fully and completely set forth herein.

37. Defendant breached the implied covenant of good faith and fair dealing by failing to pay Layton any portion of his 2002 bonus, which he had already earned by working for DIMA for 11 of the 12 months of 2002 and making significant financial contributions to DIMA.

38. [Not used]

39. [Not used]

40. [Not used]

41. Defendant unjustly benefited financially by wrongfully failing to pay Plaintiff his earned bonus.

42. As a direct result of Defendant's wrongful actions, Plaintiff has suffered damages,

including, but not limited to, loss of the prorated 2002 bonus owed to Plaintiff and interest thereon.

43. Plaintiff seeks such relief as this court may deem appropriate, including but not limited to, monetary damages in the amount of the prorated 2002 bonus owed to Plaintiff and interest thereon.

## COUNT THREE

(Breach of Contract)

44. Plaintiff repeats and realleges Paragraphs 1 through 43 above as though fully and completely set forth herein.

44A. Defendant breached its implied agreement with Layton not to fire Layton in any reduction in force or layoffs related to the DIMA-Scudder merger.

45. [Not used]

46. [Not used]

47. Plaintiff seeks such relief as this court may deem appropriate, including, but not limited to, monetary damages in the amount of Plaintiff's lost employment income including both front pay and back pay.

48. As a direct result of Defendant's breach of contract, Plaintiff has sustained damages in an amount to be determined at trial.

## COUNT FOUR

(Fraudulent Misrepresentation)

49. Plaintiff repeats and realleges Paragraphs 1 through 48 above as though fully and completely set forth herein.

49A. Defendant, induced Layton to forego good employment opportunities elsewhere through promises and other representations which carried the implicit agreement not to fire Layton

in the round of terminations related to the merger. Yet Defendant knew at the time it made those promises that it did not intend to accord Layton any protection from being included in the post merger terminations. Layton reasonably relied on Defendant's material and false representations to his detriment. Defendant is liable in fraud for making false statements about its own future conduct.

50. [Not used]

51. Defendant possessed superior knowledge as to the matters to which its material representations related, and Plaintiff reasonably relied to his detriment on its superior knowledge.

52. The material representations made by Defendant in the information it provided to Plaintiff were intended to, and did, induce Plaintiff to remain employed by DIMA and forego other valuable employment opportunities.

53. Plaintiff seeks such relief as this court may deem appropriate.

## COUNT FIVE

(Negligent Misrepresentation)

53A. Plaintiff repeats and realleges Paragraphs 1 through 53 above as though fully and completely set forth herein.

53B. Defendant, induced Layton to forego good employment opportunities elsewhere through promises and other representations which carried the implicit agreement not to fire Layton in the round of terminations related to the merger. Yet Defendant should have known at the time it made those promises that it did not intend to accord Layton any protection from being included in the post merger terminations. Layton reasonably relied on Defendant's material and false representations to his detriment

53C.	Defendant is liable for negligent misrepresentation if it reasonably should have known that it would not protect Layton from post merger layoffs when it entered into an implied contract with Layton not to terminate him in any reduction in force or layoff related to the merger.

53D.	Defendant possessed superior knowledge as to the matters to which its material representations related, and Plaintiff reasonably relied to his detriment on its superior knowledge.

53E.	The material representations made by Defendant in the information it provided to Plaintiff were intended to, and did, induce Plaintiff to remain employed by DIMA and forego other valuable employment opportunities.

53F.   Plaintiff seeks such relief as this court may deem appropriate.

DEMAND FOR JURY TRIAL

54.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

JOHN R. LAYTON, plaintiff,

By his attorneys,

BARRON & STADFELD, P.C.

/s/ Kevin F. Moloney
Kevin F. Moloney  BBO No. 351000
100 Cambridge Street, Suite 1310
Boston, Massachusetts 02114
Tel.: 617.531.6569

and
/s/ John K. Weir
John K. Weir, admitted PHV
John K. Weir Law Offices, LLC
300 Park Avenue, Suite 1700
New York, New York 10022
Tel.: 212.572.6374

Dated: March 21, 2004.

Certificate of Service.

This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Kevin F. Moloney

Dated: March 21, 2004.

[351473]