UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
)
JOHN R. LAYTON,                             )
                                            )
       *Plaintiff,*                            )
                                            )
v.                                          )
                                            )
DEUTSCHE INVESTMENT MANAGEMENT              )   CIVIL ACTION
AMERICAS, INC.                              )   NO. 04-10500-EFH
                                            )
       *Defendant.*                           )
_____)

## DEFENDANT'S OPPOSITION TO
## PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT

Defendant Deutsche Investment Management Americas Inc. ("DIMA") hereby opposes Plaintiff's Motion to Amend his Complaint. As grounds for its Opposition, DIMA states as follows:

## PROCEDURAL BACKGROUND

In his original Complaint, filed on March 11, 2004, Plaintiff asserted four causes of action: violation of the Age Discrimination in Employment Act ("ADEA") (Count I); breach of the implied covenant of good faith and fair dealing (Count II); breach of contract (Count III); and, negligent/fraudulent misrepresentation (Count IV). The basis for Counts II, III, and IV of Plaintiff's original Complaint was a letter agreement that was offered to Plaintiff on November 19, 2002. Plaintiff returned this letter agreement to DIMA only after deleting two material provisions and signing it "as amended."

The original Complaint alleged that DIMA violated the implied covenant of good faith and fair dealing in connection with the letter agreement (Count II), that DIMA breached the letter agreement by not paying him $244,014 after Plaintiff allegedly signed and accepted its terms

(Count III), and that DIMA negligently and/or fraudulently misrepresented the number and ages of employees who had been terminated on a list attached to the letter agreement (Count IV). Similarly, Plaintiff's counsel represented to the Court at the June 30, 2004 Fed. R. Civ. P. 16(b)/LR 16.1 scheduling conference that Counts II, III, and IV were all based on the letter agreement.

On June 30, 2004, the Court adopted the parties' jointly proposed scheduling order. Under this scheduling order, motions to amend the pleadings were to be filed on or before September 1, 2004. Expert disclosures were to be made on or before December 1, 2004, and all discovery was to be completed by February 15, 2005.

The Court extended the fact discovery deadline in this case *four times* in response to joint motions of the parties, until August 31, 2005. The Court similarly extended the deadline for completing expert discovery until November 1, 2005 based on requests by the parties. These joint motions also requested the extensions of other deadlines that followed the discovery deadlines, such as for filing dispositive motions and for the final pre-trial conference. In *none* of these joint motions (or in the most recent joint motion for referral to non-binding mediation) did the parties seek to extend the deadline for amending the pleadings.

Indeed, Plaintiff did not file a motion to amend his complaint until March 21, 2006 – two years after he filed his original Complaint, eighteen months after the date set forth in the scheduling order in this case, and one month after he filed his opposition to DIMA's Motion for Summary Judgment. DIMA's Motion for Summary Judgment, filed on January 17, 2006, is currently pending before the Court.

In his proposed Amended Complaint, Plaintiff completely changes the factual bases and theories of Counts II, III, and IV. Plaintiff also proposes to amend Count IV from the original

2

Complaint by separating it into two claims: negligent misrepresentation (Count IV) and fraudulent misrepresentation (Count V). These claims no longer involve the letter agreement offered to him on November 19, 2002. Rather, Counts III, IV, and V now arise from an alleged oral promise by DIMA to retain Plaintiff during any reductions in force. Count II now concerns a prorated bonus for 2002 that was allegedly withheld from Plaintiff after his termination. For the reasons explained below, Plaintiff's Motion to Amend his Complaint must be denied.[1]

## ARGUMENT

A.   Legal Standard

Plaintiff incorrectly argues that his Motion to Amend his Complaint should be determined pursuant to Fed. R. Civ. P. 15(a), under which a motion for leave to amend a complaint is to be given "freely given when justice so requires." Id. In Foman v. Davis, 371 U.S. 178 (1962), the United States Supreme Court listed reasons for not permitting a motion to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment…." Id. at 182.

However, where, as here, a motion to amend has been filed after a scheduling order deadline, the "freely given" standard in Fed. R. Civ. P. 15(a) is replaced by the more stringent

---

[1] In both his instant Motion and his pleadings filed in response to DIMA's Motion for Summary Judgment, Plaintiff intimates that further amendments will be forthcoming if the Court allows his Fed. R. Civ. P. 56(f) request to proceed with discovery for his ADEA claim (Count I) under a disparate impact theory. Plaintiff's desire to assert an ADEA claim under a disparate impact theory would constitute a major alteration of this case, would threaten further prejudice to DIMA, and would inevitably lead to even more delays. Because Plaintiff's proposed Amended Complaint does not contain any such changes to Count I, however, DIMA will not fully address the impropriety of adding an ADEA disparate impact claim at this time. DIMA expressly reserves and does not waive its right to oppose any further requests by Plaintiff to amend the complaint to include an ADEA disparate impact claim (or any other claims).

"good cause" standard under Fed. R. Civ. P. 16(b).[2] Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004); O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 154 (1st Cir. 2004); Berwind Property Group Inc. v. Environmental Management Group, 233 F.R.D. 62, 66 (D.Mass. 2005). The rationale is that application of the "good cause" standard preserves the integrity and effectiveness of Fed. R. Civ. P. 16(b) scheduling orders. O'Connell, 357 F.3d at 155. As the First Circuit Court of Appeals observed in O'Connell, "[f]or Rule 16(b) to operate effectively, litigants cannot be permitted to treat a scheduling order as a 'frivolous piece of paper idly entered, which can be cavalierly disregarded without peril.'" Id. at 155 (internal quotation omitted). Applying the more liberal standard of Fed. R. Civ. P. 15(a) to motions to amend the pleadings that are filed after a party has disregarded the scheduling order deadline would effectively nullify the purpose of Fed. R. Civ. P. 16. See id. at 155. See also Riofrio Anda v. Ralston Purina Co., 959 F.2d 1149, 1155 (1st Cir. 1992) (denying motion to amend complaint, which was submitted two months after deadline set forth in the scheduling order for filing such motions, on grounds that to do otherwise would nullify the purpose of Rule 16).

The "good cause" standard under Fed. R. Civ. P. 16(b) focuses on the diligence (or lack thereof) of the party seeking to amend the pleadings. See Steir, 383 F.3d at 12; O'Connell, 357 F.3d at 155; Berwind Property Group Inc., 233 F.R.D. at 66. Although prejudice to the opposing party remains relevant, it is not the dominant criterion. O'Connell, 357 F.3d at 155. "[I]indifference" by the moving party "seal[s] off this avenue of relief" irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause. Id. at 155 (internal citation omitted). Finally, where the motion to amend is filed after the

---

[2] LR 16.1(G) likewise states that deadlines set forth in scheduling orders can be modified by the Court "only upon a showing of good cause supported by affidavits, other evidentiary materials, or references to pertinent portions of the record." Id.

opposing party has timely moved for summary judgment, a plaintiff is required to show "substantial and convincing evidence" to justify a belated attempt to amend a complaint. Steir, 383 F.3d at 12; Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994).

B.      Plaintiff Fails to Meet the Legal Standard Under Fed. R. Civ. P. 16(b).

In this case, Plaintiff's Motion to Amend his Complaint should be denied because there is no "good cause" to support such a motion under Fed. R. Civ. P. 16(b), let alone the requisite "substantial and convincing evidence" to support such a motion at this late stage of the case. As grounds for his Motion, Plaintiff states that the proposed Amended Complaint serves to conform his common law claims to the facts as developed in discovery. This argument is disingenuous – Plaintiff's Motion is instead an obvious effort to respond to DIMA's Motion for Summary Judgment and to avert dismissal of his original Complaint.

Moreover, Plaintiff fails to demonstrate a valid reason for his delay and lack of diligence in filing his motion to amend Counts II, III, and IV. The allegations upon which the proposed Amended Complaint rests were well known to Plaintiff even before he filed his original Complaint over two years ago. These allegations did not just become obvious to Plaintiff during discovery as asserted in his Motion, nor was he prevented from styling his claims at the initial filing of the Complaint to include these allegations.

Even if discovery *had* led to previously unknown facts, Plaintiff gives no valid reason for his failure to move to amend the Complaint before discovery closed on August 31, 2005 (or before DIMA filed its Motion for Summary Judgment on January 17, 2006). After all, the last deposition that Plaintiff took in this case was on June 16, 2005, and DIMA produced its last set of discovery responses to Plaintiff on July 27, 2005. Consequently, Plaintiff had ample

5

opportunity to file a motion to amend the Complaint at an earlier time, and he offers no justification for his delay in doing so.

Furthermore, contrary to Plaintiff's assertions, DIMA would be unduly prejudiced if Plaintiff's Motion to Amend his Complaint is allowed. DIMA has proceeded with discovery and its Motion for Summary Judgment under the allegations in the original Complaint and Plaintiff's counsel's original representation about Counts II, III, and IV. DIMA's objections to Plaintiff's discovery requests, and its positions throughout this case, have been based on the allegations of the original Complaint. Plaintiff's amended claims are based on new theories, and they will inevitably delay the resolution of this case. Plaintiff's amended claims will require DIMA to spend additional time and money preparing and filing a second motion for summary judgment, and they will affect DIMA's planned trial strategy and tactics. In short, the prejudice to DIMA if Plaintiff's Motion to Amend his Complaint is allowed would not be insignificant.

Plaintiff's assertion that DIMA cannot claim to be prejudiced by Plaintiff's delay in bringing his Motion because DIMA has purportedly slowed the progress of this case is erroneous. This assertion is further belied by Plaintiff's admission that his proposed changes to Counts II, III, and IV "…will not have any impact on discovery because Layton has already completed discovery with respect to those claims." (See Plf.'s Motion at 2.) Thus, there is no valid justification for his failure to bring this Motion at an earlier time when it would have caused less prejudice to DIMA.

Plaintiff simply has not demonstrated the "good cause" necessary to permit an amendment of the Complaint so far beyond the scheduling order's September 1, 2004 deadline, and he certainly has not produced "substantial and convincing" evidence to support such a motion filed after DIMA's Motion for Summary Judgment. Consequently, his Motion should be

denied. See, e.g., O'Connell, 357 F.3d 152 (affirming denial of motion to amend complaint based on a lack of "good cause"); Riofrio, 959 F.2d 1149 (affirming denial of motion to amend complaint submitted two months after deadline set forth in the scheduling order for filing such motions); Berwind Property Group Inc., 233 F.R.D. 62 (finding a lack of "good cause" and denying motion to amend complaint that was filed 15 months after the original complaint and after the discovery period had expired).

B.     Plaintiff Does Not Meet the Legal Standard Under Fed. R. Civ. P. 15(a).

Plaintiff does not even satisfy the less burdensome standard under Fed. R. Civ. P. 15(a) for moving to amend Counts II, III, and IV of his original Complaint. For the reasons explained above, Plaintiff has unduly delayed the filing of his Motion. Plaintiff's Motion was obviously filed in an effort to thwart DIMA's timely Motion for Summary Judgment and to try to avoid dismissal of Counts II, III, and IV. DIMA also has demonstrated that it will be unduly prejudiced if Plaintiff is allowed to completely change the factual allegations and theories of Counts II, III, and IV at this late stage of the case. Denial under Fed. R. Civ. P. 15(a) is merited, therefore, because Plaintiff's Motion has been unduly delayed until after DIMA filed its Motion for Summary Judgment, it was brought for a dilatory motive, and it would cause undue prejudice to DIMA. Indeed, cases cited in Plaintiff's Motion support DIMA's argument. See, e.g., Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66 (1st Cir. 1995) (affirming denial of motion to amend complaint where it was plain that plaintiffs were trying to prolong discovery and postpone a ruling on summary judgment in hopes that something concrete would eventually materialize); Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc., 882 F.2d 1510 (1st Cir. 1989) (affirming denial of motion to amend counterclaim where facts upon which the proposed counterclaim rested were known to moving party all along; only two months remained

7

in an already extended discovery period; a great deal of discovery had taken place without reference to the proposed new theory, thus prejudicing the opposing party; and the moving party never proffered a satisfactory explanation for its delay).

Furthermore, allowing Plaintiff's Motion would be futile because the revised Counts II, III, IV and V set forth in the proposed Amended Complaint fail to state claims. With regard to Count II, Plaintiff has not alleged sufficient facts to support that he was even entitled to a prorated bonus for 2002, let alone any evidence regarding the calculation or amount of such a bonus. There are a myriad of problems with Count III, including Plaintiff's failure to specify how long his so-called period of immunity from lay-off during a reduction in force was to last, making it vulnerable to dismissal pursuant to the Statute of Frauds. With respect to Counts IV and V, Plaintiff cannot demonstrate that DIMA's alleged implicit agreement to not terminate him during subsequent reductions in force was known to be false, or should have been known to be false, at the time that it was made. To the contrary, the record contains overwhelming evidence that the reduction in force that took place on November 19, 2002 within the Investment Advisory Division and resulted in Plaintiff's termination was not mandated until September 2002 – *after* DIMA's alleged implicit agreement with Plaintiff. Because the new claims presented in Plaintiff's proposed Amended Complaint cannot survive a motion to dismiss, his Motion to Amend the Complaint also warrants denial under Fed. R. Civ. P. 15(a) on the grounds that it would be futile.

## CONCLUSION

For all of the foregoing reasons, Defendant Deutsche Investment Management Americas, Inc. respectfully requests that the Court deny Plaintiff's Motion to Amend his Complaint.

    Respectfully submitted,

    DEUTSCHE INVESTMENT MANAGEMENT
    AMERICAS INC.,

    By its attorneys,

    /s/: Heather C. Krauss
    David S. Rubin, BBO # 546213
    Heather C. Krauss, BBO # 644457
    FOLEY & LARDNER LLP
    111 Huntington Avenue
    Boston, MA 02199

Dated: April 4, 2006    (617) 342-4000
    hkrauss@foley.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

    /s/: Heather C. Krauss
    Heather C. Krauss