```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

* * * * * * * * * * *  *    Civil Action No. 04-10500-EFH
                       *
JOHN R. LAYTON,        *
                       *    BBO No. 351000
        Plaintiff,     *
                       *    Memorandum of Plaintiff
v.                     *    John R. Layton in Support
                       *    of his Motion for Order
DEUTSCHE INVESTMENT    *    Extending to November 30, 2006,
MANAGEMENT AMERICAS,   *    as the Date for the Completion
INC.,                  *    of Fact and Expert Discovery
        Defendant.     *
                       *
* * * * * * * * * * *  *
```

1.  **Introduction**.

Plaintiff John R. Layton ("Layton ") has moved the court to extend to November 30, 2006, the period for completion of fact and expert discovery. He has done so, as explained in more detail below, in order to, among other things, take the deposition of: (1) Pierre DeWeck, a high ranking official of defendant Deutsche Investments Management Americas, Inc. ("DIMA"), who, although located in Europe, played a very significant decision making role in the downsizing of DIMA after its merger with Scudder in April 2002; and, (2) James Maloney("Maloney"), the head of DIMA's Human Resources Department, as Layton needs the testimony of these two DIMA officials to prepare his case for trial, including the obtaining and furnishing to an expert the information about DIMA necessary

to establish a disparate impact claim under Smith v. City of Jacksonville, 544 U.S. 228 (March 30, 2005).

The granting of this relief will not delay or extend any of the dates the court has set as to trial start date (January 16, 2007); nor will the granting of the relief sought prejudice DIMA unduly.  Rather, the granting of the relief sought will simply restore the balance and allow Layton to compete fairly and on an informed basis at the January 16, 2007 trial.

2.   Facts and Prior Proceedings.

The record of the prior proceedings in this matter demonstrates very clearly that, despite the obstacles which Layton encountered due to DIMA's course of conduct in 2004 and 2005 in failing to make discovery in a timely, forthright and complete manner, Layton proceeded diligently and in good faith to obtain the discovery from DIMA that he needs to prepare for trial.  Affidavit of John K. Weir (the "Weir affidavit"), Docket No. 57, at ¶3.  However, due to DIMA's failures to make discovery over many months, Layton has not been able to obtain the discovery he needs as to the actions of DeWeck, a key DIMA decision maker, and Maloney, head of DIMA's Human Relations Department, for purposes of proving his case, including disparate impact under Smith, and preparing properly for trial. Weir affidavit, ¶3.

For example, DIMA's initial disclosures, served July 7, 2004, failed to include the name and title of DeWeck, the very senior DIMA official who, although located in Europe, played a very significant role in the downsizing of DIMA after its merger with Scudder in April 2002.  Weir affidavit, ¶¶ 6-7, 27.  As a result, Layton did not learn of DeWeck's role until June 2005 during the depositions of DIMA's G. West Saltonstall ("Saltonstall") and Saltonstall's superior at DIMA, Gloria Nelund ("Nelund").  Id., ¶ 7.

DIMA's continued failure and refusal adequately and forthrightly to answer interrogatories and produce relevant documents, and its repeated late production of the documents it did produce, also seriously impeded Layton's discovery efforts.  In the parties' joint motion to extend discovery, filed November 19, 2004, Docket No. 14, Layton stated to the court that,

> [Layton] intends to depose eight individuals once DIMA has produced documents responsive to [Layton's] document requests.... (

(Emphasis added.)

On December 12, 2004, DIMA responded to Layton's October 12, 2004, request for production, but many of the requested documents were not produced or were produced in highly redacted form on DIMA's claim that there was no confidentiality order in place.  Weir affidavit, ¶13.

On January 26, 2005, the parties filed, Docket No. 18, and on February 3, 2005, the court allowed, the agreed upon protective order. See Docket, February 3, 2005.

On February 14, 2005, DIMA produced additional documents but many of them were still redacted, even though the protective order had been allowed on February 3, 2005. Weir affidavit, ¶16.

On March 29, 2005, DIMA informed Layton's counsel that DIMA had additional documents to produce and suggested that Layton's depositions of DIMA's Saltonstall and David Denaro ("Denaro"), scheduled for March 30 and March 31, respectively, be delayed until after DIMA produced the additional documents. Weir affidavit, ¶18. Layton's counsel agreed but insisted that the additional documents be produced by April 4, 2005. Weir affidavit, ¶19.

On April 6, 2005, because DIMA had not produced the promised additional documents, Layton filed a motion to compel production of the documents identified in his October 12, 2004, request for production. Docket No. 21.

On April 20, 2005, DIMA filed an opposition stating, among other things, that DIMA was "in the process of producing" what DIMA referred to as "a significant number" of what it claimed were "recently discovered additional documents." Docket No. 22.

4

This resulted, on May 2, 2005, in the court entering an order denying, without prejudice, Layton's motion to compel production. The docket states, "Motion denied at this time. So ordered." Docket, May 2, 2005. (Emphasis added.)

Thereupon, Layton's counsel reviewed the additional documents produced by DIMA and then re-scheduled the depositions of Saltonstall and Denaro to take place on May 31 and June 1, 2005, respectively, in Boston. Weir affidavit, ¶24.

Because the United States Supreme court had just a few weeks previously on March 30, 2005, decided in Smith v. City of Jacksonville, 544 U.S. 228 (2005), that age discrimination claims may be based upon disparate impact, Layton's counsel also began initial efforts to retain an expert to testify on disparate impact issues in this case. Weir affidavit, ¶24.

On June 1 and 2, 2005, Layton's counsel took the depositions of DIMA witnesses Denaro and Saltonstall. Weir affidavit, ¶25. Layton's counsel scheduled depositions of other DIMA witnesses -- Nelund, to whom Saltonstall reported, Kurt Miscinski, ("Miscinski") and Leo Grohowski ("Grohowski") to take place in New York (where the deponents worked for DIMA) on June 14 (Nelund) and June 15 (Miscinski and Grohowski). Weir affidavit, ¶28.

At about 5:30 p.m. on June 13, 2005, the evening before the June 14, 2005, start of Layton's deposition of DIMA's Nelund,

5

DIMA counsel delivered to Layton's counsel a package of additional DIMA documents identified by DIMA counsel as a "supplemental production."  Weir affidavit, ¶29.

The "supplemental production" was a file of documents that Nelund testified in deposition the next morning that she had maintained and kept concerning the 2002 downsizing at DIMA. Weir affidavit, ¶30.  Nelund testified that she had never seen Layton's complaint in this case and that, because she had never been contacted concerning Layton's October 12, 2004, document request, she had never made a search for the documents identified in Layton's request for documents.  Weir affidavit, ¶34.[1] [2]

On June 20, 2005, Layton served a second request for production of documents and a first set of interrogatories. Weir affidavit, ¶37.

---

[1] Although in an August 8, 2005, errata sheet (a copy of which is annexed to the Weir affidavit as Exhibit "B"), Nelund backtracked somewhat from her June 14, 2005, deposition testimony, Nelund's errata sheet statement does not contradict her testimony that she had not seen or been apprised of the content of Layton's October 12, 2004, document request and had not searched her files for her 2002 DIMA downsizing file until she was about to be deposed on June 14, 2005. Weir affidavit, ¶35-36.

[2] In the file produced by DIMA's counsel the night before the Layton deposition of Nelund, Layton's counsel discovered a memorandum from one Leonard Dolan to Saltonstall (the "Dolan memorandum"), which Saltonstall had forwarded to Nelund, and in which Dolan stressed his young age as a reason for him not to be terminated in the downsizing at DIMA.  Weir affidavit, ¶31.

6

In the week of July 21, 2005, Layton's counsel had a discussion with DIMA counsel in which Layton's counsel advised DIMA's counsel that he planned on taking the deposition of Maloney, the head of DIMA's Human Resources Department, and probably the deposition of other DIMA related persons; but Layton's counsel emphasized that he did not intend to take those depositions before DIMA made complete and responsive document production and served complete and responsive interrogatory answers.  Weir affidavit, ¶40.

On July 27, 2005, DIMA served a response, including objections, to Layton's June 20, 2005, second document request and objections and answers to the June 20, 2005, Layton interrogatories.  Weir affidavit, ¶44.

Because both discovery responses asserted various objections, and were highly non-responsive and unhelpful, they caused Layton's counsel to reaffirm his decision to postpone the taking of the Maloney deposition and those of other DIMA related persons until he received the requested documents and the answers to the interrogatories. Weir affidavit, ¶45.[3]

Because DIMA in August 2005 initiated settlement negotiations, Layton and Layton's counsel decided that settlement should be explored fully before the cost, time and

---

[3] It is Layton's position that DIMA has yet to make full and proper discovery in response to his interrogatories and requests for production.

7

expense of motion practice and additional depositions were to be incurred. Weir affidavit, ¶53.

Thus, in the September to October period, Layton's counsel spoke with DIMA counsel who while reacting negatively to the Layton settlement demand, asked for details as to the aggregate amounts of attorneys' fees incurred by Layton in this case and at the same time disclosed that he (Attorney Rubin) had not initially extended the full limit of his authorization to settle. Weir affidavit, ¶54. Attorney Rubin requested that Layton reduce his settlement demand before DIMA would consider an increase in its offer. Id. When Layton's counsel later reported to DIMA's counsel that Layton did not wish to reduce his settlement demand, Layton's counsel inquired if Layton would agree to mediation utilizing the JAMS office in Boston. Weir affidavit, ¶55.

On November 10, 11, 14 and 17, Layton's counsel negotiated with DIMA counsel the terms of a reference of this case to mediation at JAMS and the terms of a joint motion to the court to stay discovery in order to proceed to mediation. Weir affidavit, ¶56.

When, in these negotiations, DIMA counsel insisted on including in the motion to stay and refer to mediation the date of January 17, 2006, as the date for the filing of a motion for summary judgment, Layton's counsel insisted that the motion also

8

advise the court of Layton's intent to file motions to compel discovery and for further discovery if the JAMS mediation did not resolve the case.  Weir affidavit, ¶57.  Accordingly, the parties' "Joint Motion for Referral to Non-binding Mediation," Docket No. 27, filed November 18, 2005, and allowed by the court November 22, 2005, made it clear that if mediation did not result in resolving the case, at least one of the parties intended to bring on before the court motions to compel discovery and to enlarge the time for completing discovery.  The motion, in relevant part, stated,

> 3. During the mediation process, <u>all proceedings... shall be stayed</u>.
>
> 4. <u>Neither party will be prejudiced by agreeing to mediate</u>.  Specifically, <u>both parties reserve any rights or arguments they have as of this date, including any rights or arguments to raise or oppose motions to compel or modify time limits</u>.
>
> 5. The deadline for filing dispositive motions...shall be re-scheduled to January 17, 20006.  <u>This deadline, as well as subsequent scheduled events, may be subject to further re-scheduling depending upon the results of any motions contemplated in paragraph 4, above</u>.

(Emphasis added.)  On December 12, 2005, mediation went forward before JAMS in Boston, but was unsuccessful.  Weir affidavit, ¶60.[4]

---

[4] The mediator suggested a further session, but DIMA counsel indicated that he wished to confer with DIMA and that thereafter, he would contact Layton's counsel as to how to proceed. <u>Id</u>.  He did not do so. <u>Id</u>.

9

On January 17, 2006, DIMA filed a motion for summary judgment. Docket No. 30. In his opposition, timely filed on February 16, 2006, Docket Nos. 39-46, Layton contended that even on the record then established, there were genuine issues of material fact; but, in the event the court disagreed, Layton also asked the court to grant relief under Fed. R. Civ. P. 56(f) to allow additional discovery to enable Layton to demonstrate genuine issues of material fact.

On May 11, 2006, the court determined that relief to Layton by way of depositions and production of documents under Rule 56(f) was not needed to establish a genuine issue of fact,[5] as the court ruled that day that Layton, on the record then established, had demonstrated a genuine issue of material fact on Count One, Layton's claim under the ADEA. Docket No. 65. In an accompanying procedural order entered May 11, 2006, Docket No. 66, the court set the case down for trial to start January 16, 2007.

While the court undoubtedly was correct in deciding that the present record established that genuine issues of fact exist as to Count One, Layton needs additional discovery not to show that genuine issues of fact exist, but to prove to a jury each

---

[5] In a footnote the court said, "In connection with his response to defendant's Motion for Summary Judgment, plaintiff requested additional discovery pursuant to Fed. R. Civ. P. 56(f). That request is denied."

and every element of his case and to carry his burdens of production and persuasion, including providing to an expert sufficient information from DIMA to assist in the presentation of a disparate impact claim under the Supreme Court's recent decision in <u>Smith</u>.

Granting the relief sought will not prejudice DIMA unduly. But not granting the relief sought will prejudice in a substantial and fundamental way Layton's ability to present his case and participate in a fair trial of the issues to the jury.

3. <u>Conclusion and Request for Relief</u>.

Accordingly for all of the above reasons, Layton requests the court to enter an order extending to November 30, 2006, the period for the completion of fact and expert discovery.

           JOHN R. LAYTON, plaintiff,

           By his attorneys,

           BARRON & STADFELD, P.C.

           /s/ Kevin F. Moloney_____
           Kevin F. Moloney  BBO No. 351000
           100 Cambridge Street, Suite 1310
           Boston, Massachusetts 02114
           Tel.: 617.723.9800/531.6569

           and

           /s/ John K. Weir _____
           John K. Weir, admitted PHV
           John K. Weir Law Offices, LLC
           300 Park Avenue, Suite 1700

```
                                    New York, New York 10022
                                    Tel.: 212.572.6374
Dated: September 5, 2006.
```

Certificate of Service.

This document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

```
                                    /s/ Kevin F. Moloney
```

Dated: September 5, 2006

[369431.1]