UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
JOHN R. LAYTON,                         )
                                        )
       *Plaintiff*,                        )
                                        )
v.                                      )
                                        )
DEUTSCHE INVESTMENT MANAGEMENT          )   CIVIL ACTION
AMERICAS, INC.                          )   NO. 04-10500-EFH
                                        )
       *Defendant*.                       )
_____)

**OPPOSITION TO PLAINTIFF'S MOTION
FOR AN ORDER EXTENDING TO NOVEMBER 30, 2006,
AS THE DATE FOR THE COMPLETION OF FACT AND EXPERT DISCOVERY**

Defendant Deutsche Investment Management Americas Inc. ("DIMA" or "the Company") hereby submits the following Opposition to Plaintiff's Motion For an Order Extending to November 30, 2006 as the Date for the Completion of Fact and Expert Discovery ("Plaintiff's Motion").

**BACKGROUND**

In his Complaint filed on March 11, 2004, Plaintiff alleged four separate causes of action: (1) that his termination was motivated by age in violation of the Age Discrimination in Employment Act ("ADEA"), i.e., a disparate treatment theory (Count I); (2) that DIMA violated the implied covenant of good faith and fair dealing (Count II); (3) that DIMA breached a letter agreement by not paying Layton a Special Performance Incentive award described therein (Count III); and, (4) that DIMA committed negligent or fraudulent misrepresentation by misstating the number and ages of employees who had been terminated on an attachment to the letter agreement (Count IV).

On June 30, 2004, the Court adopted the parties' jointly proposed scheduling order pursuant to Fed. R. Civ. P. 16(b)/LR 16.1. Under this scheduling order, initial disclosures required by Fed. R. Civ. P. 26(a)(1)/LR 26.2(A) were to be made by July 7, 2004. Motions to amend the pleadings were to be filed on or before September 1, 2004. Expert disclosures were to be made on or before December 1, 2004, and all discovery was to be completed by February 15, 2005.

The Court extended the fact discovery deadline in this case *four times* in response to joint motions of the parties, until August 31, 2005. The Court similarly extended the deadline for completing expert discovery until November 1, 2005 based on requests by the parties. These joint motions also requested the extensions of other deadlines that followed the discovery deadlines, such as for filing dispositive motions and for the final pre-trial conference.[1]

On January 17, 2006, following the close of discovery, DIMA filed a motion for summary judgment seeking dismissal of all claims. As part of his opposition to DIMA's summary judgment motion, Plaintiff requested additional discovery pursuant to Fed. R. Civ. P. 56(f) to take or re-open the depositions of James Maloney, G. West Saltonstall, Gloria Nelund, and Pierre DeWeck, to engage in expert discovery, and to engage in other "additional discovery." DIMA opposed this request for further discovery on procedural and substantive grounds.

On March 21, 2006, while DIMA's summary judgment motion was still pending, Plaintiff moved to amend the complaint to completely alter the factual basis for, and allegations of, Counts II – IV. The Court denied Plaintiff's motion to amend in its entirety on April 6, 2006.

---

[1] In *none* of these joint motions did the parties seek to extend the deadline for amending the pleadings beyond September 1, 2004.

2

On May 11, 2006, the Court issued a decision on DIMA's motion for summary judgment. In its decision, the Court dismissed Counts II-IV from the Complaint, leaving only Plaintiff's ADEA disparate treatment claim for trial. The Court also denied Plaintiff's request for further discovery under Fed. R. Civ. P. 56(f). A copy of the Court's decision is attached as Exhibit A.

The same day that it issued its decision on DIMA's motion for summary judgment, the Court issued an order scheduling the trial on Plaintiff's ADEA remaining claim to begin on January 16, 2007. The order, which also set forth a number of pretrial deadlines, is attached as Exhibit B.

Nearly four months after the Court's May 11, 2006 decision on DIMA's motion for summary judgment, Plaintiff filed the instant Motion to re-open fact and expert discovery up to and through November 30, 2006. Plaintiff's Motion must be denied for the reasons set forth below.

## **ARGUMENT**

I. **THE COURT HAS ALREADY DENIED PLAINTIFF'S REQUEST FOR FURTHER DISCOVERY**

Plaintiff's instant Motion seeks the *same* discovery that was requested in his opposition to DIMA's motion for summary judgment. (Indeed, the memorandum filed in support of the Motion consists primarily of paragraphs that appear to have been cut and pasted from that opposition and from an Affidavit submitted by Plaintiff's counsel in support of a sur-reply.) Because the Court denied Plaintiff the additional discovery sought then, it should do so again in response to the instant Motion.

II.   THIS CASE DOES NOT CONTAIN AN AGE DISCRIMINATION CLAIM UNDER A DISPARATE IMPACT THEORY.

Plaintiff repeatedly states in his Motion that one reason for his desire to take additional discovery is "…to prepare his case for trial, including the obtaining and furnishing to an expert the information about DIMA necessary to establish a disparate impact claim under Smith v. City of Jacksonville [sic], 544 U.S. 228 (March 30, 2005)."

However, Plaintiff's Complaint alleges age discrimination based solely on a disparate treatment theory – *not* a disparate impact theory. Plaintiff has never sought to amend his Complaint to include a disparate impact claim, notwithstanding the fact that Smith v. City of Jackson, 125 S.Ct. 1536 (2005), was decided on March 30, 2005, months before the discovery deadline in this case. Moreover, while Smith held that a disparate impact theory based on age may be cognizable, that case made clear that a plaintiff is responsible for isolating and identifying the specific employment practice that is allegedly responsible for any observed statistical disparities. See id. at 1545. It is not enough to simply allege that there may have been some disparate impact on workers – which is, at most, all that Plaintiff has done here – or even to point to a generalized policy that leads to such an impact. See id. For these reasons, allowing further fact and expert discovery in order to allow Plaintiff to develop a brand new disparate impact claim is unwarranted, untimely, and highly prejudicial to DIMA at this late stage of the case.[2]

---

[2] Moreover, any future motion brought by Plaintiff to amend his complaint to include an ADEA disparate impact claim must be denied for the reasons set forth in DIMA's Opposition to Plaintiff's Motion to Amend Complaint dated April 4, 2006. As set forth more fully in that Opposition, where a motion to amend is filed after a scheduling order deadline, the plaintiff must satisfy the "good cause" standard under Fed. R. Civ. P. 16(b), which focuses on the diligence (or lack thereof) of the party seeking to amend the pleadings. Where a motion to amend is filed after the opposing party has timely moved for summary judgment, the plaintiff is required to show "substantial and convincing evidence" to justify a belated attempt to amend a complaint. DIMA's arguments that there was no "good cause" to support such a motion under Fed. R. Civ. P. 16(b), let alone the requisite "substantial and convincing evidence" to support such a motion in April 2006 grow even more compelling as time passes.

III.  PLAINTIFF'S PRIOR LACK OF DILIGENCE SHOULD NOT BE REWARDED BY NOW ALLOWING HIS REQUEST TO RE-OPEN DISCOVERY.

Plaintiff's Motion was filed *more than one year* after the fact discovery deadline expired, *nearly ten months* after the expert discovery deadline expired, *nine months* after DIMA filed its motion for summary judgment, *nearly four months* after the Court issued its summary judgment ruling and shortly before trial in this matter is scheduled to begin.  Plaintiff cites to no authority to support his contention that re-opening discovery at this late stage of the case should be allowed.

Allowing the re-opening of discovery would be particularly inappropriate where, as here, Plaintiff has unnecessarily delayed seeking the now-desired discovery.  Plaintiff's attempts to blame DIMA for his own delay in taking the remaining discovery that he seeks are misleading and disingenuous.  The last deposition that Plaintiff took in this case was on June 16, 2005 – more than two months before the fact discovery deadline expired – and DIMA produced its last set of discovery responses to Plaintiff on July 27, 2005 – one month before the expiration of the fact discovery deadline.  It is Plaintiff, not DIMA, who has consistently allowed this case to lie dormant for months.

For example, even accepting Plaintiff's assertion that the name of Pierre DeWeck (who resides and works in Germany) did not surface until depositions of other DIMA employees in May and June 2005,[3] he offers no explanation as to why he did not seek to take DeWeck's deposition in the intervening months prior to the August 31, 2005 fact discovery deadline.

---

[3] Plaintiff suggests that DIMA was obligated to inform him earlier of DeWeck's existence pursuant to Fed. R. Civ. P. 26(a)(1). Fed. R. Civ. P. 26(a)(1) required DIMA to disclose only those individuals "likely to have discoverable information that [DIMA] may use to support its claims or defenses."  Id.  DeWeck does not fall within that definition.  Furthermore, multiple documents produced to Plaintiff in April 2005 revealed DeWeck's name, so it is disingenuous for Plaintiff to claim that his name surfaced for the first time at depositions taken in May and June 2005.

5

By way of another example, last summer the parties discussed scheduling the deposition of James Maloney for August 2, 2005. Plaintiff's counsel thereafter cancelled the deposition, which he now purports to have been based on his decision to first compel further production of documents from DIMA. (Plaintiff's counsel never bothered to tell DIMA's counsel that he had decided not to go forward with Maloney's deposition, even though DIMA's counsel faxed a letter to him on July 29, 2005 to confirm that the deposition was still proceeding. As a result, DIMA incurred unnecessary time and expenses for its counsel to travel to New York to prepare for and defend Maloney's deposition.) Plaintiff's counsel never sought to even notice or reschedule Maloney's deposition, nor did he file any motion to compel the allegedly sought-after documents during the time between DIMA's July 27, 2005 document production and the expiration of the discovery period on August 31, 2005.

Plaintiff's counsel now claims that his decision not to incur the expense of additional motion practice and depositions in August 2005 was made because he wanted to exhaust settlement negotiations. DIMA's counsel raised settlement during a telephone call with Plaintiff's counsel several weeks before the expiration of the fact discovery deadline, on August 5, 2005. During that call, Plaintiff's counsel rejected DIMA's offer outright. DIMA's counsel requested a counter-demand. Plaintiff's counsel did not provide one until October 26, 2005 – and then, only after an October 11, 2005 letter by DIMA's counsel as to whether Plaintiff was interested in providing a demand because the summary judgment deadline then in effect was fast approaching. There was not an ongoing settlement negotiation from early August through October 2005 as Plaintiff's counsel would have it appear – rather, he failed to communicate with DIMA's counsel for months before re-surfacing in late October 2005. Thus, to the extent that

6

Plaintiff claims that DIMA somehow lulled him into not seeking discovery earlier by discussing settlement, the chronology of events reveals that his assertion is not credible.

Similarly, Plaintiff never made timely expert witness disclosures as required by this Court's previous orders and Fed. R. Civ. P. 26(a)(2)(B), even though the deadline for making such disclosures expired on August 15, 2005 and the deadline for the parties to complete all expert discovery ended on November 1, 2005. Pursuant to Fed. R. Civ. P. 26(a)(2)(B), Plaintiff was required to submit a report, prepared and signed by a witness retained for providing expert testimony, which contains the following information:

> …a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Id.

Even if Plaintiff's expert needs additional information to complete such a report, nothing prevented Plaintiff from submitting at least a preliminary report prior to the expiration of the deadline that listed qualifications, publications, compensation, and past testimony. No valid excuse has been raised by Plaintiff for his failure to make timely disclosures on these limited issues.

Perhaps most significantly, Plaintiff has offered no justification for his delay in filing the instant Motion until September 5, 2006, nor can he. After all, the Court's ruling on DIMA's summary judgment motion was issued nearly four months ago. Plaintiff simply should not be allowed further discovery now in order to make up for his earlier and consistent lack of diligence

7

in this case. Plaintiff has had more than enough time to obtain discovery and to prepare his case for trial.

IV.     ALLOWING PLAINTIFF'S MOTION WILL INEVITABLY DELAY THE TRIAL

Finally, Plaintiff fails to convincingly demonstrate that the discovery he desires would not delay the trial currently scheduled for January 16, 2007. Plaintiff proposes to take the deposition of an executive residing in Germany, to engage in full expert discovery, and to file motions to compel, among other, unspecified discovery. It is highly likely that the time required to complete this discovery will go beyond November 30, 2006.[4] After all, if Plaintiff is now allowed to use an expert witness, DIMA will need time to engage and consult its own expert and to depose Plaintiff's expert. Moreover, if DIMA identifies its own expert to use as a witness at trial, Plaintiff will likely seek to depose DIMA's expert. Furthermore, DIMA may renew its motion for summary judgment based on the additional discovery, which will also take additional time to resolve. In short, the additional discovery sought by Plaintiff would inevitably delay the January 16, 2007 trial.

In short, DIMA vigorously opposes Plaintiff's request to re-open fact and expert discovery at this very late stage of the case, when the parties are preparing for trial on his remaining ADEA claim.

---

[4] Indeed, although a final pretrial conference has not yet been scheduled, LR 16.5(C) requires expert disclosures to be made at least 90 days beforehand.

8

**CONCLUSION**

For the foregoing reasons, Defendant, Deutsche Investment Management Americas, Inc., respectfully requests that this Court deny Plaintiff's Motion For an Order Extending to November 30, 2006 as the Date for the Completion of Fact and Expert Discovery.

>                     Respectfully submitted,
>
>                     DEUTSCHE INVESTMENT MANAGEMENT
>                     AMERICAS INC.,
>
>                     By its attorneys,
>
>                     /s/: Heather C. Krauss
>                     David S. Rubin, BBO # 546213
>                     Heather C. Krauss, BBO # 644457
>                     FOLEY & LARDNER LLP
>                     111 Huntington Avenue
>                     Boston, MA 02199
> Dated: September 18, 2006    (617) 342-4000
>                     hkrauss@foley.com

**CERTIFICATE OF SERVICE**

  I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

              /s/: Heather C. Krauss
              Heather C. Krauss