UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| * * * * * * ** * * * * * * | * | Civil Action No. 04-10500-EFH |
| | * | |
| JOHN R. LAYTON, | * | BBO No. 351000 |
| | * | |
| Plaintiff, | * | <u>Corrected</u> Reply Memorandum |
| | * | of Plaintiff Layton |
| v. | * | to Defendant's |
| | * | Opposition to |
| DEUTSCHE INVESTMENTS | * | Layton's Motion for |
| MANAGEMENT AMERICAS, INC., | * | an Order Extending |
| | * | to November 30, 2006, |
| | * | as the Date for the |
| Defendant. | * | Completion of Fact and |
| | * | Expert Discovery |
| | * | |
| * * * * * * ** * * * * * * | * | |

Plaintiff John R. Layton ("Layton") submits this Reply Memorandum to DIMA's Opposition to his "Motion for an Order Extending to November 30, 2006 as the Date for the Completion of Fact and Expert Discovery" because, in its opposition, DIMA has omitted material facts, misstated Layton's positions and the prior proceedings and events in this case, and has misconstrued prior rulings of the court.

1. <u>This court's ruling on the DIMA summary judgment motion did not decide that Layton would not be entitled to reasonable further discovery</u>.

This court's ruling on the summary judgment motion did not decide that Layton would not be entitled to reasonable further discovery; nor is such a ruling reasonably inferred from the court's denial of the DIMA motion for summary judgment on Count

One, the age discrimination count, and setting the case for trial in January 2007, eight months after the decision.

The court's decision on the summary judgment motion and the court's related denial of the request of Layton for additional discovery under Fed. R. Civ. P. 56(f) to assist in defeating the motion by showing a genuine issue of material fact, was based upon the court's determination that Layton did not need further discovery to establish a genuine issue of material fact as the court had found that already there was sufficient evidence in the record to show such an issue.

Layton's present motion seeks additional discovery not to show a genuine issue of material fact but to assist in proving all elements of his case at trial before the jury and to assist his expert in determining whether the documents and testimony from DIMA establish a disparate impact claim.

2.  <u>The language of Count One is broad enough to encompass both a disparate treatment theory as well as a disparate impact theory under the later decision of the Supreme Court in Smith v. City of Jackson; and, if not, the court should allow an amendment to add it</u>.

The complaint in this case does not specify that the age discrimination was premised only on a disparate treatment theory, as DIMA incorrectly suggests. The language of Count One, <u>see</u> complaint, ¶¶ 28-33, was (and is) broad enough to encompass both a disparate treatment theory as well as a disparate impact theory so as to allow for the eventuality that

2

occurred in March 2005, when the United States Supreme Court, in Smith v. City of Jackson, 544 U.S. 228 (2005), resolved the split in the circuits as to whether an age discrimination claim could be based upon disparate impact (the First Circuit did not allow it, but the Second Circuit did[1]), by holding that the claim could be established by proof of disparate impact.

If, however, the court does not agree that the language of the complaint is broad enough to encompass proof of disparate impact, Layton should be allowed to amend the complaint to add a disparate impact theory because the court has held that the trial in this case will be based upon age discrimination, and disparate impact/disparate treatment is only a question of how

---

[1] First Circuit: Chouinard v. New Hampshire Dept. of Corrections, 157 Fed.Appx. 322, 324 (1st Cir. 12/2/05) (recognizing that Smith v. City of Jackson, 544 U.S. 228 (2005) overruled Mullin v. Raytheon Co. 164 F.3d 696 (1st Cir. 1999) "where we had held that such claims are not recognized by the ADEA"); Mullin v. Raytheon Co. 164 F.3d 696, 703-04 (1st Cir. 1999) ("For the foregoing reasons, we join those courts of appeals which have held that the ADEA does not impose liability under a theory of disparate impact.");

Second Circuit: Meacham v. Knolls Atomic Power Laboratory, 381 F.3d 56 (2nd Cir. 2004.), vacated on other grounds, KAPL, Inc. v. Meacham, 544 U.S. 957, 125 S.Ct. 1731, 161 L.Ed.2d 596 (2005) ("Stare decisis requires us to hold that the ADEA allows disparate impact claims. As defendants concede, we have repeatedly so held. See, e.g., Smith v. Xerox Corp., 196 F.3d 358, 364 (2d Cir.1999); Criley v. Delta Air Lines, Inc., 119 F.3d 102, 105 (2d Cir.1997) (per curiam); Maresco, 964 F.2d at 115"; Criley v. Delta Air Lines, Inc., 119 F.3d 102 (2nd Cir. 1997.) ("Plaintiffs also claim that Delta's hiring plan was discriminatory, even without ageist intent, because of its "disparate impact" on Pan Am pilots aged 55 and over.  Although the Supreme Court has never decided whether a disparate impact theory of liability is available under the ADEA, Hazen, 507 U.S. at 610, 113 S.Ct. at 1701, in our circuit, we have recognized such an action.")

that claim is to be proved to the jury by a preponderance of the evidence.

3. <u>The depositions of DeWeck and Maloney are critical to plaintiff's case</u>.

As set forth in detail in the Affidavit of John K. Weir, Docket No. 57, the reasons for Layton's not deposing DIMA's DeWeck (whose name had not been included in DIMA's Initial Disclosures) and Maloney, the DIMA head of Human Resources, during the period June and August 2005 was that the responses to Layton's discovery requests, which were served by DIMA on July 17, 2005, a month before the then deadline for fact discovery, were highly unresponsive. Layton did not want to take DeWeck's deposition or that of Maloney until after receipt of proper discovery responses.

Layton seeks to prove a disparate impact based upon the decision to downsize DIMA after it acquired Scudder. Layton believes that DeWeck, who was never identified in the Initial Disclosures, was the architect of that overall decision, even though he may have left the implementation of that policy to the DIMA personnel in New York.

DIMA counsel admits that Maloney's deposition was discussed with DIMA counsel in July 2005 yet, as explained in the Weir Affidavit, Maloney was never offered for deposition after August 2005. Layton believes that Maloney, who, in addition to being the DIMA head of Human Resources, was the DIMA representative at

4

the mediation last December, will be one of DIMA's principal trial witnesses. Layton should not be put at a disadvantage in having to cross-examine him at trial without having his prior sworn deposition testimony.

The depositions of DeWeck and Maloney will not put Layton over the ten deposition limit of Local Rule 26.1(c).

4. <u>Settlement negotiations</u>.

As DIMA has now put in issue alleged delay for the purpose of seeing settlement negotiations through to conclusion, the court should be apprised of the fact that after the decision on the summary judgment motion, Layton in June 2006 provided a settlement demand to DIMA's counsel, but Layton's counsel has yet to be given any response to that proposal other than that Layton should proceed with his motions respecting discovery because, DIMA's counsel advised in substance, it might take a while. Now, three months later, it has been a very long "while." DIMA cannot have it both ways -- DIMA should not be permitted to delay its response on settlement so it can argue that the requested discovery is now too close to trial, while attempting to castigate Layton for not making motion after motion while settlement discussions were proceeding last Fall.

5. <u>Experts</u>.

The positions taken by DIMA on extensions of discovery have been quite odd. On the one hand, DIMA agreed to an extension to

5

August 2005 for fact discovery but, on the other hand, DIMA would not agree to extend expert discovery beyond the prior March. This made no sense.

Notably, in the agreed "Joint Motion for Referral to Non-binding Mediation," Docket No. 27, filed November 18, 2005, and allowed by the court November 22, 2005, the parties made it clear that if mediation did not result in resolving the case, at least one of the parties intended to bring on before the court motions to compel discovery and to enlarge the time for completing discovery. The motion, in relevant part, stated,

> 3. During the mediation process, <u>all proceedings... shall be stayed</u>.
>
> 4. <u>Neither party will be prejudiced by agreeing to mediate</u>. Specifically, <u>both parties reserve any rights or arguments they have as of this date, including any rights or arguments to raise or oppose motions to compel or modify time limits</u>.
>
> 5. The deadline for filing dispositive motions...shall be re-scheduled to January 17, 20006. <u>This deadline, as well as subsequent scheduled events, may be subject to further re-scheduling depending upon the results of any motions contemplated in paragraph 4, above</u>.

(Emphasis added.)

Until Layton has obtained the deposition testimony of DeWeck and Maloney and responsive answers to interrogatories and production of documents, Layton cannot provide to his expert the evidence the expert needs to analyze to establish disparate impact, which largely is a statistical case premised upon

6

knowing the ages of all DIMA terminees during the affected period.

6. <u>Trial date</u>.

Layton's motion expressly does not seek any change n the trial date of January 16, 2007.  Layton seeks only an extension of fact discovery to November 30, 2006.  There are still over two months before the expiration of the deadline proposed by Layton, and if both sides were to be (as Layton is) willing to be fully cooperative in the remaining discovery, there would be no impact on the proposed deadline.  If, however, DIMA intends to oppose making discovery in an expedited manner the reasonable discovery Layton legitimately needs to prove his case at trial, DIMA's conduct in that regard may present a risk to the January 16, 2007, date.

John R. Layton, plaintiff,

By his attorneys,

BARRON & STADFELD, P.C.

/s/ Kevin F. Moloney_____
Kevin F. Moloney  BBO No. 351000
100 Cambridge Street, Suite 1310
Boston, Massachusetts  02114
Tel.: 617.723.9800/531.6569

and

_____
John K. Weir
Admitted Pro Hac Vice
John K. Weir Law Offices, LLC

7

                                                     300 Park Avenue, Suite 1700
                                                     New York, New York, 10022
                                                     Tel.: 212.572.5374

Date: September 21, 2006

<u>Certificate of Service</u>.

    This document, filed through the ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                    /s/ Kevin F. Moloney_____

Dated: September 21, 2006

[371539.1]